### State of Vermont v. Edward Connolly

[350 A.2d 364]

No. 96-74

Present: Barney, C.J., Smith, Daley, Larrow and Billings, JJ.

Opinion Filed December 2, 1975

Motion for Reargument Denied December 29, 1975

*Stephen W. Webster,* Orange County State's Attorney, Randolph, for the State.

*Robert Edward West,* Defender General and *Charles S. Martin,* Appellate Defender, Montpelier, for Defendant.

Larrow, J. Respondent Connolly was tried by jury in the District Court of Vermont, Unit No. 5, Orange Circuit, on an information in three counts, charging him with taking a wild doe out of season on August 8, 1973 (10 V.S.A. § 4745), taking the doe by illegal means, an artificial light (10 V.S.A. § 4747), and possessing parts of a wild deer, illegally taken by artificial light and out of season (10 V.S.A. § 4781). He was found not guilty on the first two counts, but guilty on the third count of illegal possession. His motion for judgment n.o.v. was denied, and he has appealed the judgment of conviction. Previous to trial, and after hearing, the trial court made findings of fact and denied his motion to suppress evidence allegedly procured without a warrant, by search conducted at respondent's resi-

dence in violation of his Fourth Amendment rights. The admission of this evidence at the trial is the principal basis for this appeal, respondent contending error in its admission and, without it, a lack of sufficient evidence to sustain a guilty verdict.

The facts surrounding the search in question are largely undisputed, and were found in detail by the trial court at the pre-trial suppression hearing. Around midnight August 8, 1973, supervising game warden Dawson, with associates, arrested one Stanley Woodward with parts of a fresh-killed doe in his car. Woodward told them respondent Connolly had actually killed the doe, they had split it up, and Connolly had just left with his share. He also stated Connolly lived at 9 Pearl Street in Randolph Village, and could usually be found either there or at the Midway House, a restaurant. Dawson sent some men to the Midway House, and with others went to 9 Pearl Street. He was met at the door by a Mrs. Francis, found to be an undivorced woman living with the respondent for several weeks, and described by counsel as his "co-tenant." The scope of their relationship is not here material, as respondent does not claim she lacked authority to consent to a search.

At the door, Mrs. Francis informed the officers that respondent was not home, and in response to Dawson's inquiry whether they might come in to look for Mr. Connolly, she said to come in. They searched the house for the respondent, who was not there. Dawson noticed fresh blood on the floor near the refrigerator, opened it, and saw parts of a freshly killed doe. From experience, he could tell it had been freshly killed. Mrs. Francis denied knowledge of how the meat got in the refrigerator, and the wardens seized and secured it for evidentiary purposes. They then watched the house for several hours, but respondent did not appear.

From the foregoing, the trial court concluded that the risk of the evidence being destroyed or disposed of, plus the danger of losing "the distinctive characteristics of freshly killed deer meat" constituted exigent circumstances justifying the warrantless search, evidently relying upon *People* v. *Dumas,* 109 Cal. Rptr. 304, 512 P.2d 1208 (1973). *Dumas* involved the warrantless search of an automobile after a valid search of an apartment led to discovery of the car keys. We do not regard its reasoning, even if we subscribed to it, as controlling here because it did involve an automobile, a factor commonly

recognized as requiring less justification for search, and greater danger of evidence destruction, than a dwelling house.

■■ We would first treat of respondent's claim for judgment n.o.v. It is based upon the assumption that the evidence in question should have been excluded, and that without it there was not enough evidence to justify conviction. We do not agree. The argument is largely predicated upon the assumption that by its verdict of not guilty on the first two counts the jury necessarily found the testimony of Woodward totally incredible, so that, without the controverted evidence, they had nothing upon which to convict. The fallacy of this argument is that it overlooks the prerogative of the jury, as the factfinding body, to believe some of a witness's testimony without believing it all. They could well have considered Woodward truthful in his story of dividing the meat with Connolly, but unworthy of belief when he stated Connolly rather than himself did the actual taking. His testimony had some corroboration, from the meat found in his own home, the story of an eyewitness who saw Connolly and Woodward together, and some evidence of an attempt by respondent to fabricate an alibi. Believing the part about dividing the carcass would be enough to sustain a conviction, for the statute does not require the possessor to be the actual killer. (10 V.S.A. § 4781). And, a trier of fact has the right to believe the testimony of a witness in part and to reject it in part. *Ohland* v. *Dubay*, 133 Vt. 300, 336 A.2d 203 (1975), and cases there cited. Respondent's claim of error in denying his motion for judgment n.o.v. is not sustained. While illegal possession, actual or constructive, involves knowledge of the illegality of the taking, this element is supplied by the calendar; the other elements by portions of Woodward's testimony which the jury must have believed.

Respondent's other claim of error has more merit, assuming it is properly before us. The State claims that it is not, because the evidence in question was not objected to at trial. Respondent's rights, it says, were thereby waived, even if the trial court was in error with respect to its suppression ruling.

The State's claim has some merit, and it is not without case law support. Under Rule 41 of our Vermont Rules of Criminal Procedure, adapted directly from the federal rule of the same number, the weight of authority seems to be that in the ab-

sence of further evidence on the question of admissibility new objection upon trial is not necessary, particularly where the trial is before the same judge who ruled on the pre-trial motion. *Waldron* v. *United States,* 219 F.2d 37 (D.C. Cir. 1955); *United States* v. *Whitlow,* 339 F.2d 975, 980 (7th Cir. 1964); *Williams* v. *United States,* 263 F.2d 487 (D.C. Cir. 1959). For cases arising under our rule, the federal decisions would, of course, be authoritative. (Cf. Reporter's Notes, V.R.Cr.P. 1). In this case, however, they are at best persuasive, since the case was brought before the effective date of our Criminal Rules, October 1, 1973. V.R.Cr.P. 59 (a).

We do not consider, however, that the adoption of our Criminal Rules made any significant change in Vermont law in this particular. There has been no prior decision squarely on point, but we think that there was implied acceptance of the non-necessity of continued objection expressed in *State* v. *Blondin,* 128 Vt. 613, 270 A.2d 165 (1970), where, in denying appellate review of a pre-trial refusal to suppress, then Chief Justice Holden stated:

> And if at the trial of the case at hand, *other or different facts should appear*, the facts, as stipulated or previously found at the pretrial hearing, could not foreclose a reexamination of issues of constitutional concern. (Emphasis supplied, citation omitted.)

Where, as here, no new facts were to be adduced, and the same judge was presiding, we hold that a substantial constitutional right is not waived by failure to object when the evidence previously ruled admissible is offered at trial. The whole procedure, if repeated, would be a useless performance. It might well prejudice the respondent before the jury. And it would serve in no way to further apprise the court or the State of respondent's claim with respect to the proffered evidence. That claim had already been advanced and fully litigated. In sum, we hold the admissibility of the evidence in question to be properly before us for review. We will not imply waiver from a failure to object which would have been at most a bare formality. And, we do not consider the State's claim that the evidence came into the case only as a result of questioning by respondent's attorney to be supported by a fair reading of the transcript.

■ The State further claims that the objection was waived by failure to file, and to include within it, a motion for new trial based upon the claimed error. It cites scant authority for this proposition. 5 Am.Jur.2d *Appeal and Error* § 555 states the rule as applying in some jurisdictions, but expressly excepts matters arising prior to trial, as was the ruling here. *Johnson* v. *Rule*, 105 Vt. 249, 256, 164 A. 681 (1933) deals with a new trial motion based upon newly discovered evidence, a matter not germane to the point here in issue. We are pointed to no authority for the general proposition that every error below must be raised by motion for new trial to be reviewable here, and we are not prepared to so hold.

We thus reach the underlying question of respondent's Fourth Amendment rights. The search of the dwelling house itself is not objected to, because permission was secured to look for the respondent, and the authority to give such permission is not questioned. But, the search in question plainly went beyond the scope of the permission; the State does not contend it was looking in the refrigerator for the respondent. We enter upon this consideration with the observation that the extensive briefing and argument occasioned by this relatively minor prosecution could probably have been obviated by a simple request to look in the refrigerator, and could certainly have been obviated had one of the several officers engaged in this massive investigation busied himself with prompt application for a search warrant, instead of lying in wait for several hours outside the dwelling house. What "exigent circumstances" precluded resort to either one of these alternatives is not apparent from the record. The motor in a refrigerator, unlike that in an automobile, is not the means of speedy locomotion calculated to whisk evidence from the reach of the officer.

■ It seems elementary, and undisputed, that the scope of a permission to search may be limited, and that exceeding such scope does not differ in principle from search without permission. *Lewis* v. *United States*, 385 U.S. 206 (1966) ; *United States* v. *Dichiarinte*, 445 F.2d 126 (7th Cir. 1971) ; *Harris* v. *United States*, 331 U.S. 145, 153 (1947) ; *People* v. *Schmoll*, 383 Ill. 280, 48 N.E.2d 933, 934 (1943). Belief, however well founded, that an article sought is concealed in a dwelling house furnishes no justification for a search of that place without a

warrant. *Agnello* v. *United States,* 269 U.S. 20, 33 (1925); *Vale* v. *Louisiana,* 399 U.S. 30, 34 (1970).

■■ *Vale* v. *Louisiana, supra,* enumerates the exigent circumstances permitting warrantless search of dwellings. They are, as presently developed, (1) consent, (2) officers responding to an emergency, (3) hot pursuit of a fleeing felon, (4) evidence in the process of destruction, and (5) evidence about to be removed from the jurisdiction. The blood on the floor might well be admissible as being in plain view during the permitted search; it could also strengthen the probable cause requirement for a search warrant. But the deer carcass was not within plain view, nor within the scope of the obtained consent. And, it was not within any of the exceptions outlined in *Vale.* Certainly it was not as capable of quick destruction as narcotics, with respect to which warrant requirements are strictly adhered to. Without doubt, three officers could have preserved the status quo while another sought the warrant which the law requires, even on the unlikely assumption that permission sought would have been refused. Apart from the legal requirements, even the common courtesy of a request was not observed. We can only conclude that the sole reason why a search warrant was not sought and obtained was that condemned in *Johnson* v. *United States,* 333 U.S. 10, 15 (1948): "inconvenience to the officers and some slight delay necessary to prepare papers and present evidence to the magistrate." This seems a slight price to pay for the fundamental rights preserved by the Fourth Amendment.

Respondent's motion to suppress should have been granted; the error in denying it requires reversal.

*Judgment reversed and cause remanded.*