## State of Vermont v. Louis Bruno, Jr.

[595 A.2d 272]

No. 90-014

Present: **Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.**

Opinion Filed June 7, 1991

*William Sorrell*, Chittenden County State's Attorney, Burlington, and *Gary S. Kessler*, Resource Attorney, Department of State's Attorneys, Montpelier, for Plaintiff-Appellee.

*Blais, Cain, Keller & Fowler, Inc.*, Burlington, for Defendant-Appellant.

**Allen, C.J.** Defendant, Louis Bruno, Jr., appeals from his DUI conviction, alleging error in the trial court's denial of his motion to suppress. We affirm.

On June 30, 1989, defendant was arrested for DUI and following arraignment filed a motion to suppress on the ground that there was not a reasonable basis for the arresting officer's initial stop. At the hearing on the suppression motion, the arresting officer testified that he had observed defendant's vehicle drifting in its lane on Pine Street, that defendant had pulled into a dead end behind Burlington Electric Department and briefly parked with the headlights off, and that defendant had operated his vehicle for a period without its headlights on. The officer further testified that he stopped the vehicle because it had no headlights on. The defendant denied that his was the car that the arresting officer had observed drifting on Pine Street and denied operating the vehicle with the headlights off.

The motion judge was "unable to find" that defendant was drifting in his lane and whether he had turned his lights back on when he left the Burlington Electric Department premises. The motion judge denied defendant's motion "solely on the factual basis" that defendant, alone in his car, had pulled into and briefly parked in an "apparently useless dead end."

At the outset of trial defendant renewed his motion to suppress, asserting that there was no reasonable basis to stop and that the motion judge had erred. The error, defendant argued, was that the officer had limited his subjective basis for stopping defendant to defendant's headlights being off. Thus, in the absence of a finding that defendant's headlights were off, defendant's motion must be sustained. To uphold the stop solely on the basis of defendant's act of pulling into a dead end and parking

was to impermissibly substitute the court's own basis for the officer's. The trial judge reserved decision and advised objection at the appropriate time during trial. At the close of the State's case, defendant again renewed his motion, which the trial judge denied. The trial judge found that there were sufficient articulable facts to justify the officer's initial stop of defendant.

A defendant does not have a vested right in an erroneous pretrial ruling. A ruling on a pretrial motion to suppress "is tentative only, and subject to revision at the trial." *State v. Blondin*, 128 Vt. 613, 617, 270 A.2d 165, 167 (1970); see *State v. Senecal*, 145 Vt. 554, 558, 497 A.2d 349, 351 (1985). The rationale behind this holding is manifest. The trial holds the potential for curing error. In holding that pretrial rulings are not necessarily binding on the trial court, we stated that

> [i]f the rule were otherwise a trial judge would be tied to obvious errors even when, as here, the earlier rulings were made by a different judge. The trial judge would moreover be rendered helpless in the face of additional evidence or other considerations developing during trial of the case which might otherwise dictate a modification or a reversal of the preliminary rulings.

*State v. Baldwin*, 140 Vt. 501, 514, 438 A.2d 1135, 1142 (1981). In furtherance of both protection of defendant's rights and promotion of judicial economy, it is preferable for a trial court, where serious grounds arise as to the correctness of the pretrial ruling, to receive evidence and reconsider the ruling.[1] Such reconsideration accedes to defendant's request that the pretrial ruling be reconsidered. Further, such reconsideration resolves what is often a factual question before a tribunal which is much more capable of making factual determinations than an appellate court. See *Blondin*, 128 Vt. at 616, 270 A.2d at 166 (unavailability of interlocutory appeal from pretrial suppression

---

[1] We emphasize that trial court reconsideration of pretrial suppression rulings is to be the exception, not the rule. A contrary emphasis would have a completely opposite and devastating effect on judicial economy. As we stated in *Baldwin*, 140 Vt. at 514, 438 A.2d at 1142, "caution should be the guiding principle in acting on pretrial motions renewed at, during, or after trial."

motion especially salutary "where the admissibility of evidence depends on factual contentions, more appropriately resolved during the course of a plenary trial").

In the instant case defendant was saddled with what he thought to be an erroneous pretrial ruling on his motion to suppress. Defendant renewed his motion before the trial judge. Having listened to defendant's argument that the motion judge impermissibly substituted his own basis for the officer's, and that the officer's basis was not factually shown, the trial judge stated: "we'll leave it up to you [defendant] to move for your motion again. The Court would like to hear some testimony first." The trial judge then heard the direct and cross-examination of the arresting officer,[2] and denied defendant's motion to suppress when it was renewed at the close of the State's case. In his summation, the trial judge reiterated that "[t]here was articulable facts that the officer did have to suspect a possible DWI when he first made the initial stop." Dissatisfied with the ruling on the renewed motion, defendant asserts on appeal that "the trial court improperly denied Defendant's motion to suppress." Yet beyond this opening assertion, defendant's brief re-

---

[2] The trial judge heard the officer testify that defendant was "drifting and swaying back and forth in the lane." He heard the officer rebut defendant's attorney's attempt to place the swerving at a place where the road itself swerves. He heard the officer state that "there should have been no reason for him [defendant] to be down there [behind Burlington Electric Department]." He heard the following colloquy:

Q. Now as part of your routine at two o'clock in the morning you would be monitoring what might be termed a suspicious vehicle?
A. That's correct.
Q. So you decided to monitor this vehicle who had kind of backed into a parking area and turned its lights off?
A. Correct.
He also heard:
Q. Now officer, regardless of the lights, if you had seen the vehicle swaying in its own lane of traffic, driving into the Burlington Electric parking lot for a few minutes at that hour in the morning and then driving out onto Pine Street, would you have stopped the vehicle?
A. Eventually, yes. I would have followed it for a little longer and then eventually stopped it.

lies for its grounds of error exclusively upon the pretrial ruling.[3]

Defendant, in focusing his appeal solely on alleged error in the pretrial suppression ruling, overlooks the reason behind the rule requiring renewed objection. As outlined above, the basis for requiring defendant's objection at trial and the basis for the trial court's reconsideration is the potential for correcting such pretrial error. Having asked the trial court to reconsider his motion to suppress because of claimed error in the pretrial suppression ruling, and having received such reconsideration, defendant on appeal cannot ignore the effect of this reconsideration.[4] Where the trial court acceded to defendant's request to reconsider the motion to suppress and reached its own determination, this determination was a ruling on the motion. For defendant to succeed on appeal where, as here, the trial court's determination was adverse to him, he must as a threshold matter show error in this determination.

Defendant having failed to point us to any particularized error in the trial court's ruling on the motion to suppress, and finding none ourselves, defendant's appeal does not

---

[3] Defendant urges on appeal basically the same argument he presented to the trial judge: "[t]he court erred when it substituted its own justification for the stop in place of the police officer's justification." Defendant grounds his appeal on the ruling by the motion judge. As defendant's brief states: "The *motion court's* actions appear to be contrary to the letter and spirit of *Terry v. Ohio. . . .* The *motion court's* ruling, in effect, means that the court will uphold as valid a stop as long as there is some justification even though it is not the justification the police officer had." (Emphasis added.) That defendant's argument is based on what occurred before the motion judge is further evidenced by the fact that defendant's brief refers solely to the motion transcript.

[4] Defendant seems to consider his objection at trial to the admission of evidence sought to be suppressed as a mere formality necessary to preserve appellate review. Yet, as stated above, there is reason behind the rule. Defendant cannot simply rely, in his appeal, on pretrial error which he has asked the trial judge to reconsider and correct, without assessing the effect of this reconsideration. To do so would be tantamount to treating the trial judge's reconsideration as a "useless performance." Cf. *State v. Connolly*, 133 Vt. 565, 569, 350 A.2d 364, 367 (1975). Yet as was implicit in *Connolly*, and explicit in *Senecal*, we do not consider a renewed objection at trial to the admissibility of evidence which was the subject of a suppression hearing before a different judge to be a "useless performance."

succeed. On the testimony before it, it cannot be said that the trial court erred in its finding that the officer articulated sufficient facts to justify the stop. "[T]o justify a legal investigatory stop . . . a police officer need have no more than an articulable and reasonable suspicion that a motor vehicle violation is taking place." *State v. Boardman*, 148 Vt. 229, 231, 531 A.2d 599, 601 (1987). The trial court heard the officer testify that defendant swerved and drifted in his lane, pulled in behind Burlington Electric Department and briefly parked, and then subsequently operated his vehicle for a period with its headlights off. We agree with the trial court that these facts are sufficient to give rise to a reasonable and articulable suspicion on the part of the officer that the defendant was operating his motor vehicle while intoxicated.[5]

*Affirmed.*

**Dooley, J.,** concurring. I concur in the opinion of the Chief Justice and its reasoning. I believe that the result in this case is commanded by the *Senecal* rule as set forth in *State v. Senecal*, 145 Vt. 554, 558, 497 A.2d 349, 351 (1985), and its progenitors *State v. Connolly*, 133 Vt. 565, 569, 350 A.2d 364, 367 (1975), and *State v. Blondin*, 128 Vt. 613, 616–17, 270 A.2d 165, 166–67 (1970). Under this rule, a defendant who has lost a motion to suppress must renew it at trial if a different judge presides or new evidence is offered. We have justified the rule on the ground that pretrial rulings are tentative and that the trial judge must be given an opportunity to consider the issues if that judge has not done so previously. See, e.g., *State v. Gonyaw*, 146 Vt. 559, 562, 507 A.2d 944, 947 (1985). The rule also would apply where the judges are the same but new evidence is offered.

Although coerced by the *Senecal* rule, defendant made the motion to suppress at trial and obtained the ruling he would now like to ignore. It makes no sense to say that he can prevail

---

[5] Indeed, defendant seemed to concede as much in his argument before the trial court. Speaking of defendant's activity in pulling behind the Burlington Electric Department, defendant stated that "[w]e agree that that is more than enough reason to stop under those circumstances, if the police officer had given that as a basis for the stop."

*as if the second motion and ruling never occurred* based on the first motion. Such a holding would make the second motion a formalism—necessary to obtain review but wholly irrelevant to the result. Whatever I think of the *Senecal* rule, I cannot find that defendant can ignore the trial ruling in this case.

I write here to say, however, that *Senecal* is wrongly decided, and if this were a clear case in which to overrule it—that is, if the question were whether an error is preserved although not raised at trial—I would join the dissent. This case demonstrates the unfair results produced by *Senecal* and the lack of an overriding justification in judicial economy or control by the trial judge. Its application here allows the prosecution to keep presenting its position until it achieves a result that can stand on appeal.

In many *Senecal* situations, we are forcing a second evidentiary hearing on a matter already heard and decided. At the same time, we are facing a major problem managing the criminal caseload in the district court. Backlogs in both misdemeanors and felonies have risen substantially over the last few years.

In earlier times, most cases were resolved from start to finish by one judge. Even with rotation, that should be the norm in most criminal cases in most counties. The volume of cases has reached such a level in Chittenden County, however, that the workload is divided so that one judge specializes in pretrial motions and another in trials. The *Senecal* rule throws away much of the work of the motions judge as if it never happened. Ultimate control in the trial judge over all the issues gains nothing in accuracy or efficiency. Nor is that judge put in error by a ruling of a motions judge made without any involvement of the trial judge. The situation is uniquely exacerbated in this area because our rules require the issues to be raised by pretrial motions, see V.R.Cr.P. 12(b), and our decisions require pretrial rulings in many cases. See *State v. Ritchie*, 144 Vt. 121, 123, 473 A.2d 1164, 1165 (1984). Thus, a defendant cannot avoid double adjudication by raising a matter only at trial.

We rightfully give great weight to the need for finality of adjudication. Our normal concern for finality would never accept inconsistent factual adjudication *on the same issue in the same case*. The justification for doing so in *Senecal* cases is, at best, weak. On its face, it comes from an excessive concern that the

trial judge should have the final say on every issue that arises in a criminal case and should never be put in error for something that judge did not do. We could accomplish the same end by saying that the trial judge has the right to reopen pretrial issues but there is no requirement that the defendant refile every motion to force that second examination. Ironically, a rule ostensibly justified in terms of fairness to the trial judge is very unpopular among trial judges, as demonstrated by their actions in the cases coming before this Court. Routinely, the trial judge refuses to consider refiled motions because of lack of time and discomfort with the role of reversing the decision of a colleague. In fact, compliance with *Senecal* has become a technical formality, used largely to avoid issues on appeal.

We should overrule *Senecal* and stop the waste of limited resources, as well as the unfairness that this case represents.

**Morse, J.,** dissenting. The Court today holds that evidence which should have been suppressed prior to trial may be used to convict a defendant at a trial that never should have been held. This topsy-turvy procedure is unfair and counterproductive to an orderly administration of criminal justice. I therefore dissent.

At the outset, I point out that the procedure condoned in this case for fixing a mistake made at the pretrial suppression hearing was not remotely suggested by the State in advocating for affirmance nor mentioned by defendant in an overabundance of candor. It springs from the Court without the usual appellate practice of briefing and argument.

Moreover, we have no basis to know what facts the trial court relied on in denying defendant's motion to suppress at trial. The only findings of fact on the suppression issue were made by the judge presiding at the pretrial hearing. Ordinarily, we would remand a case in this posture for articulation of the basis and reasons for denial of a suppression motion. *State v. Senecal*, 145 Vt. 554, 561–62, 497 A.2d 349, 353 (1985); V.R.Cr.P. 47(c).

Be that as it may, I would reverse on this record because the State should not be permitted a second chance to cure an error made at the pretrial suppression motion level.

Our rules require criminal defendants to raise before trial "[m]otions to suppress evidence on the ground that it was ille-

gally obtained." V.R.Cr.P. 12(b)(3). The defendant here followed the rule. Our rules further provide that "[i]f the motion [to suppress] is granted, the evidence shall not be admissible at the trial or at any future hearing or trial." V.R.Cr.P. 41(f). Here, as this Court has concluded, the motion should have been granted; the suppression judge should have ruled that there was an insufficient basis to stop defendant. Ordinarily, we would reverse, but the error is deemed not reversible in this case because the error caused a trial at which the trial court disagreed with the suppression judge's previously made findings of fact. The trial court thus "cured" the suppression judge's error. Of course, it was error for the trial to have occurred at all: had the suppression judge done as he was supposed to according to this Court, there would have been no trial. The evidence would have been suppressed, thereby leaving no evidence available to prove that defendant had committed a crime.

The unfairness of the Court's approach becomes apparent simply by pointing out that, had the defendant appeared at the suppression hearing before a judge who would have reached the right result, he would now be a free man. Instead, the suppression judge reached the wrong result, giving the State a second chance to convict defendant, a chance the law says should not have happened.

Where does this legal hocus pocus come from? Although some courts have allowed trial evidence to cure erroneous suppression rulings, this rule is by no means unanimous.

> Courts differ regarding what evidence can be considered by the appellate court on review. Most federal courts state that, in passing on the denial of a suppression order, the appellate court can consider the evidence introduced at trial as well as that introduced in relation to the pretrial suppression motion. Several state courts disagree, limiting appellate review to only that evidence introduced at the suppression hearing or through the motion papers.

W. Ringel, Searches & Seizures, Arrests and Confessions § 20.7(b), at 20–35 (2d ed. 1991). The federal cases follow *Carroll v. United States*, 267 U.S. 132, 162 (1925), which established the rule in the most cursory fashion: "The whole matter [that was the subject of the pretrial motion] was gone into at the trial, so no right of the defendants was infringed." Once the

United States Supreme Court spoke, the issue became "settled law," and other federal courts have not fully explored the issue, choosing instead to simply recite the *Carroll* incantation. State courts adopting a *Carroll*-type rule have done so in a similar manner, bereft of analysis, simply concluding without discussion that the rule is "not prejudicial" to defendants. *People v. Braden*, 34 Ill. 2d 516, 520, 216 N.E.2d 808, 810 (1966); *Commonwealth v. Young*, 349 Mass. 175, 178, 206 N.E.2d 694, 696 (1965); see also *State v. Carrico*, 696 S.W.2d 511, 513 (Mo. Ct. App. 1985)("The real damage is not done until the evidence is introduced in the trial . . . . Thus, a trial court can receive additional evidence and change its ruling prior to admitting the objected-to-items in evidence . . . ."). These cases miss the obvious point: defendant should never have been subjected to the curative trial.

Numerous state courts have deviated from the federal rule and have reached conclusions supporting this dissent. *Trusty v. State*, 308 Md. 658, 670–72, 521 A.2d 749, 755–56 (1987); *People v. Kaigler*, 368 Mich. 281, 288, 118 N.W.2d 406, 409 (1962); *State v. Gora*, 148 N.J. Super. 582, 592, 372 A.2d 1335, 1340, *cert. denied*, 74 N.J. 275, 377 A.2d 679 (1977); *People v. Wilkins*, 65 N.Y.2d 172, 180, 480 N.E.2d 373, 378, 490 N.Y.S.2d 759, 764 (1985); *People v. Gonzalez*, 55 N.Y.2d 720, 721–22, 431 N.E.2d 630, 630–31, 447 N.Y.S.2d 145, 145–46 (1981). One state has reached the same result by statute. See *People v. Wright*, 72 Cal. App. 3d 328, 344, 140 Cal. Rptr. 98, 107 (1977) (under Cal. Penal Code § 1538.5(i), (j), search or seizure issue can be relitigated at trial, but court can only look at evidence previously presented at a special hearing on validity of the search or seizure).

The New York Court of Appeals grounded its rule on a policy of curbing abuse of the system and injustice to defendants. See *Wilkins*, 65 N.Y.2d at 180, 480 N.E.2d at 378, 490 N.Y.S.2d at 764 (citing *People v. Havelka*, 45 N.Y.2d 636, 384 N.E.2d 1269, 412 N.Y.S.2d 345 (1978), which established the rule in the context of remands for additional evidentiary hearings on suppression issues). If a defendant's motion is erroneously denied at a suppression hearing, a potential for abuse exists whenever the State gets a second opportunity to cure the error: the temptation will always exist consciously or unconsciously for the State

to fill in the holes that appeared at the suppression hearing and tailor its evidence "to fit the court's established requirements." *Havelka*, 45 N.Y.2d at 643, 384 N.E.2d at 1273, 412 N.Y.S.2d at 349. The potential for such abuse was present in this case. The suppression court clearly found certain parts of the police officer's testimony less than convincing, and a temptation existed for it to be presented more forcefully at trial.

As a general rule, "a reviewing court determines the correctness of a trial court's ruling 'as of the time when it was made and according to what the record shows was before the lower court at that time.'" *Henry v. State*, 468 So. 2d 896, 899 (Ala. Crim. App. 1984)(quoting 24A C.J.S. *Criminal Law* § 1836, at 555–56); accord *State v. Boles*, 246 N.C. 83, 85, 97 S.E.2d 476, 477 (1957). I see no reason to deviate from this rule in this case.

The practice created by the Court also has serious practical drawbacks. V.R.Cr.P. 12 was promulgated to simplify pretrial practice, give counsel and the court early opportunity "to evaluate and shape the case," determine preliminary matters that could "delay or interrupt trial," and avoid unnecessary trials. See Reporter's Notes, V.R.Cr.P. 12, at 71, 72 (1983). Case law amplifying the rules provides that renewed motions at trial may be the basis for revising pretrial rulings. As stated in *State v. Baldwin*, 140 Vt. 501, 514, 438 A.2d 1135, 1142 (1981):

> We agree with defendant's position that pretrial rulings are not necessarily binding throughout the trial; they are tentative only, and subject to revision at trial. If the rule were otherwise a trial judge would be tied to obvious errors even when, as here, the earlier rulings were made by a different judge. The trial judge would moreover be rendered helpless in the face of additional evidence or other considerations developing during trial of the case which might otherwise dictate a modification or a reversal of the preliminary rulings. While caution should be the guiding principle in acting on pretrial motions renewed at, during, or after trial, they are not immutable regardless of the circumstances which may arise later in time. (Citation omitted.)

The so-called *Senecal* rule, that a defendant waives his claim of error in a pretrial ruling unless objection is renewed at trial, is predicated on the possibility that "'other or different facts [may] appear'" at trial which should cause "'a reexamination of

issues of constitutional concern.'" *State v. Connolly*, 133 Vt. 565, 569, 350 A.2d 364, 367 (1975) (quoting *State v. Blondin*, 128 Vt. 613, 270 A.2d 165 (1970)). When, however, new facts are not adduced and the same judge presides over the pretrial matter and the trial, no waiver of review of a pretrial ruling will be found. *Senecal*, 145 Vt. at 558, 497 A.2d at 351.

The Court does not invoke a *Senecal* waiver—properly so, because defendant renewed his objection in moving to suppress at trial—but misconstrues, in my opinion, the reach of what the *Senecal* line of cases envisions may be of consequence in making revised rulings at trial.

For instance, in cases such as this one where the evidence is the same at trial as it was at the suppression hearing, the *Senecal* doctrine cannot be read properly as permitting the trial judge to overrule the facts found by another judge, who reviewed essentially the same evidence at the suppression hearing. To allow otherwise serves no legitimate purpose and flies in the face of time-honored doctrines of finality. To permit the practice of the trial judge finding facts specifically not found by the suppression judge on essentially the same testimony renders our justice system suspect and offends the spirit of not placing a defendant in double jeopardy. It tells a defendant, you may need to undergo two evidentiary proceedings before different judges and be subject to the most restrictive view of the factual merits on which your motion rests.

I agree with Justice Dooley's concurrence that *Senecal* should be overruled, except I believe *Senecal* does not demand affirmance in this case. The *Senecal* doctrine is not entirely irrational if we reverse here. At best, the *Senecal* doctrine should be viewed narrowly, as solely a rule of waiver in circumstances where a defendant does not seek at trial a second, more favorable, opinion. I read *Senecal* as requiring the second opinion, using the trial court as a quasi-intermediate appellate court. As pointed out by the Court, the second opinion is for "protection of defendant's rights," not to cure erroneous suppression of evidence before trial.

The principal practical difficulty with the Court's approach is the reality that the trial judge—knowing that another judge has denied a motion to suppress on the very evidence presented anew at trial—simply does not feel obligated to second-guess

the other judge. This is natural given the reluctance to try issues over again and the deference judges ordinarily give to each other's rulings. The trial record in this case, being devoid of any factual reason given to deny suppression, underscores the concern that the trial judge may simply defer to the result reached by the pretrial judge.

The better practice is to require the State to fully litigate a suppression issue prior to trial and not burden a defendant with the possibility that at trial a concerned prosecutor may endeavor to improve the factual record on the suppression issue. A defendant should not have to run the gauntlet twice.

I would reverse.