

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

Nos. 04-19-00737-CR, 04-19-00738-CR

Aidan **VITELA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 451st Judicial District Court, Kendall County, Texas
Trial Court Nos. 5942 & 6023
Honorable Kirsten B. Cohoon, Judge Presiding

### OPINION ON SECOND MOTION FOR REHEARING

Opinion by:    Patricia O. Alvarez, Justice

Sitting:        Patricia O. Alvarez, Justice
               Luz Elena Chapa, Justice
               Lori I. Valenzuela, Justice

Delivered and Filed: April 27, 2022

AFFIRMED

On September 29, 2021, we issued an opinion and judgment which affirmed the trial court's judgment. Appellant Aidan Vitela timely filed a motion for rehearing. We denied the motion for rehearing but replaced our opinion with an opinion dated December 22, 2021. Vitela again filed a timely motion for rehearing. For the reasons given below, we deny Vitela's motion for rehearing, but we withdraw our opinion and judgment of December 22, 2021, and we substitute this opinion and judgment in their stead.

**BACKGROUND**

On March 12, 2015, Vitela was driving his two friends, Victoria Snell and Sydney Smith, down Scenic Loop in Boerne. He sped around a curve and lost control of his car, crashing into a tree. Smith died due to her injuries in the crash. As part of the police investigation, officers obtained a search warrant to recover Vitela's black box event data recorder from his car. Once officers collected the evidence, they performed a download of the recorder's data to gain information on the car's speed at and before the time of the crash.

In preparation for trial, Vitela challenged the officers' authority to seize his car's black box and access its information. He also challenged the black box's reliability. But the trial court denied Vitela's pretrial motion to suppress as well as his pretrial request to disqualify the State's expert witnesses or exclude the black box data as unreliable evidence. After the jury heard the State's evidence, the prosecutor argued that Vitela had driven recklessly, which Vitela disputed. The jury convicted Vitela of the lesser offense of criminally negligent homicide and found him guilty of aggravated assault for injuring Snell.

Vitela now appeals, arguing that the trial court abused its discretion 1) by denying his motion to suppress evidence of his car's "black box" event data recorder, 2) by allowing the State's expert witnesses to testify and admitting black box evidence after a *Daubert* hearing, and 3) committed reversible error by denying a request for a mistrial due to improper closing statements by the prosecutor. He also argues that the evidence against him was legally insufficient to support a conviction for criminally negligent homicide. We affirm.

**ADMISSIBILITY OF BLACK BOX EVIDENCE UNDER THE 4TH AMENDMENT**

**A.      Parties' Arguments**

Vitela argues that the warrant police used to seize his car's black box was not based on probable cause and that the black box was not found in the place where police expected to find it.

Consequently, he argues that his motion to suppress the evidence should have been granted. The State responds, inter alia, that Vitela abandoned his car and had no standing to complain of any seizure related to it. Vitela points out that evidence of abandonment was developed during trial, not during the pretrial hearing on his motion to suppress. He objects to its relevance in our appellate review of the trial court's pretrial ruling.

## B.    Standard of Review

A trial court's ruling refusing to suppress evidence is generally reviewed for an abuse of discretion. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). But the appellate court uses a bifurcated standard, reviewing applications of law de novo. *State v. Ruiz*, 581 S.W.3d 782, 785 (Tex. Crim. App. 2019) (citing *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013)). This standard gives almost total deference to a trial court's determination of historical facts. *Crain*, 315 S.W.3d at 48 (citing *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007)).

## C.    Applicable Law

*1. Fourth Amendment, Reasonable Expectation of Privacy (Standing), and Abandonment*

To collect evidence from a suspect's vehicle, police must obtain a warrant based on probable cause, unless an exception to the warrant requirement applies. *See Gonzales v. State*, 190 S.W.3d 125, 134 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)). However, if a suspect has abandoned a vehicle, he may have no standing to challenge any evidence collected from it. *See Gonzales*, 190 S.W.3d at 135 (citing *Swearingen v. State*, 101 S.W.3d 89, 101 (Tex. Crim. App. 2003)).[1]  Therefore, "[b]efore

---

[1] Standing is a preliminary element of a Fourth Amendment challenge, and the burden is on the defendant to establish it. *State v. Klima*, 934 S.W.2d 109, 110 (Tex. Crim. App. 1996) (citing *Wilson v. State*, 692 S.W.2d 661, 667–69 (Tex. Crim. App. 1984)); *accord Rakas v. Illinois*, 439 U.S. 128 (1978).

challenging a search or seizure on constitutional grounds, a defendant must establish that he had a reasonable expectation of privacy in the place where the search or seizure occurred." *Mejia v. State*, 761 S.W.2d 35, 37 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd); *accord Handy v. State*, 189 S.W.3d 296, 299 (Tex. Crim. App. 2006); *Lewis v. State*, No. 2-09-319-CR, 2010 WL 3304205, at *2 (Tex. App.—Fort Worth Aug. 19, 2010, no pet.). The test to determine whether a suspect has abandoned his vehicle turns on whether the suspect showed intent to abandon it and whether the suspect's intent was based on any police misconduct. *Gonzales*, 190 S.W.3d at 135 (citing *McDuff v. State*, 939 S.W.2d 607, 616 (Tex. Crim. App. 1997) (holding automobile abandoned when left in motel parking lot for six days and defendant went to another state)).

### 2. *Facts Eligible for Consideration*

"When a hearing on the motion to suppress evidence is granted, the court may determine the merits of said motion on the motions themselves, or upon opposing affidavits, or upon oral testimony, subject to the discretion of the court." TEX. CODE CRIM. PROC. ANN. art. 28.01; *accord Hahn v. State*, 852 S.W.2d 627, 629 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd). A trial court may also revisit its determination at any time during a trial. *See Black v. State*, 362 S.W.3d 626, 633 (Tex. Crim. App. 2012).

Vitela has cited *Black v. State*, and *O'Hara v. State*, 27 S.W.3d 548 (Tex. Crim. App. 2000), to argue that "[i]t is clear in Texas that a trial judge may not base findings of fact on evidence that was not before the trial judge during the suppression hearing or during any relitigation of the suppression hearing during trial." We disagree with this summary of the law. *See Montalvo v. State*, 846 S.W.2d 133, 138 (1993). Rather, "[t]he trial court ha[s] continuing jurisdiction over the case and [i]s free to reconsider its own earlier suppression ruling." *Id.* (citing *State v. Bruno*, 595 A.2d 272, 273 (Vt. 1991) ("A ruling on a pretrial motion is tentative only and subject to revision at trial.")). It is the reviewing court that is generally limited to what was before the trial court

when it made its ultimate decision. *See Black*,[2] 362 S.W.3d at 636; *O'Hara*, 27 S.W.3d at 551.[3] But even so, Fourth Amendment standing may require a broader review. *See Wilson v. State*, 692 S.W.2d 661, 669 (Tex. Crim. App. 1984) (citing *Combs v. United States*, 408 U.S. 224 (1972) (per curiam)).

In Supreme Court case *Combs v. United States*, for example, after the State raised the defendant's Fourth Amendment standing for the first time on appeal, the Supreme Court remanded the petitioner's case to the district court because there had been no "factual determination of whether petitioner had an interest in the searched premises that was protectible." *Wilson*, 692 S.W.2d at 669 (quoting *Combs*, 408 U.S. at 228).

Later, in Texas Court of Criminal Appeals case *Wilson v. State*, the State similarly raised the defendant's Fourth Amendment standing for the first time on appeal. *Id*. In an opinion on rehearing, the *Wilson* court referred to *Combs* as its closest analog as it turned to "the record" to find "the facts necessary to determine whether the appellant had standing." *Id*. The *Wilson* court noted that the defendant testified at the suppression hearing but not at trial, and therefore analyzed evidence from the suppression hearing to determine whether Wilson had sufficiently established his Fourth Amendment standing, which the court concluded that he had. *See id*. We read this

---

[2] *Black* focuses on the formality of re-opening suppression proceedings during a jury trial in the face of express and regular objections by the defendant. The *Black* court was neither confronted with a defendant's introduction of trial evidence supporting the trial court's suppression ruling, nor did it contemplate the defendant's Fourth Amendment standing to challenge the State's warrant. *See Black*, 362 S.W.3d 626, 628–29 (Tex. Crim. App. 2012).

[3] The *O'Hara* court stated, "On appellate review, we must examine the record as it existed at the time of the suppression hearing," citing *Hoyos v. State*, 982 S.W.2d 419, 422 (Tex. Crim. App. 1998), and *Vargas v. State*, 838 S.W.2d 552, 556–57 (Tex. Crim. App. 1992). *O'Hara v. State*, 27 S.W.3d 548, 551 (Tex. Crim. App. 2000). Both *Hoyos* and *Vargas* noted the importance of only considering what the trial court considered. *See Hoyos*, 982 S.W.2d at 422; *Vargas*, 838 S.W.2d at 556–57. We must conclude that the emphasis in *O'Hara* on the suppression hearing record was a result of only considering what the trial court considered. *See O'Hara*, 27 S.W.3d at 551; *accord Hardesty v. State*, 667 S.W.2d 130, 133 n.6 (Tex. Crim. App. 1984).

analysis of the suppression hearing evidence as a function of where the defendant's testimony appeared in the record, and not due to the Court of Criminal Appeals limiting its review. *See id.*[4]

D. **Analysis**

*1. Fourth Amendment, Reasonable Expectation of Privacy (Standing), and Abandonment*

Directly before trial, the trial court ruled against Vitela's Fourth Amendment motion to suppress. The trial court did not explain its denial at the time, but it had received a copy of the search warrant as evidence and taken arguments from the parties.[5] Vitela did not assert a reasonable expectation of privacy. *Contra Wilson*, 692 S.W.2d at 671. Furthermore, the search warrant admitted by the State could not account for whether Vitela retained a reasonable expectation of privacy in the place to be searched at the time law enforcement executed their warrant. *See Gonzales*, 190 S.W.3d at 135.

During trial, Vitela developed evidence about his car: Vitela's car was towed to a wrecker's lot following the crash. The wrecker's lot notified Vitela he could collect his car after he paid the towing and storage fees. Vitela made no effort to collect the car, and his insurer sent it to an auto auction. Law enforcement officers went to the auto auction lot to execute their warrant. That location is where officers discovered and ultimately collected the black box evidence.

After trial, the trial court provided Findings of Fact and Conclusions of Law in support of its pretrial ruling denying Vitela's motion to suppress. The trial court included facts related to Vitela's standing that were established during trial. The trial court concluded that Vitela lacked standing to bring a Fourth Amendment challenge against the State's black box evidence, and we

---

[4] In reviewing trial testimony relevant to a pretrial suppression ruling, the Court of Criminal Appeals in *Rachal v. State*, 917 S.W.2d 799, 809 (1996), stated: "[I]t would be unreasonable to ignore trial evidence in our review of the court's suppression decision only to be confronted by the evidence in our consideration of whether the error was harmless."

[5] In its post-trial Findings of Fact and Conclusions of Law, the trial court concluded, inter alia, that the search warrant was valid.

agree. The record reflects Vitela's apparent intent to abandon his car by his lack of effort to collect it or to communicate with anyone about whether he planned to collect it. When the police obtained evidence from the car, it was about to be sold by Geico.

Based on the evidence in the record, Vitela did not retain a reasonable expectation of privacy in his totaled vehicle, which meant that he maintained no standing to challenge the evidence collected. *See Gonzales*, 190 S.W.3d at 135.

*2. Facts Eligible for Consideration*

We originally affirmed the trial court's judgment on Vitela's Fourth Amendment suppression issue because a review of the entire record, including the trial facts cited by the trial court in its written ruling, showed that Vitela had no reasonable expectation of privacy in his abandoned vehicle. We cited *Gonzales v. State*, 190 S.W.3d 125.

In a motion for rehearing, Vitela maintained an objection to the trial court's inclusion of trial evidence in its written denial of Vitela's motion to suppress, as well as our consideration of the same. In our next opinion, we cited *Wilson v. State*, 692 S.W.2d 661, for the proposition that Fourth Amendment standing 1) is a preliminary element of a Fourth Amendment challenge, which is the defendant's burden, and 2) can be analyzed for the first time on appeal.[6] *Wilson* illustrates that standing does not depend solely on evidence developed at the hearing on a motion to suppress. *See Wilson*, 692 S.W.2d at 669.

In his second motion for rehearing, Vitela reiterates his argument that the trial court should not have included trial facts in its written ruling on the motion to suppress and that we should not have considered them. We disagree. First, the cases cited by Vitela do not dictate what the trial court may consider; they limit what the reviewing court may consider in deciding whether the trial

---

[6] Here, the State raised standing below, and the trial court made a ruling based on Vitela's lack of standing.

court arrived at the correct conclusion in its deliberations. *See Black*, 362 S.W.3d at 636; *O'Hara*, 27 S.W.3d at 551. Second, we have not exceeded the scope of what the trial court ultimately considered. *See Hoyos v. State*, 982 S.W.2d 419, 422 (Tex. Crim. App. 1998); *Vargas v. State*, 838 S.W.2d 552, 556–57 (Tex. Crim. App. 1992). Third, we reviewed the entire record for evidence of Vitela's Fourth Amendment standing and concluded he did not have a reasonable expectation of privacy in his abandoned vehicle. *See Wilson*, 692 S.W.2d at 671; *Gonzales*, 190 S.W.3d at 135.

We recognize that Vitela was not specifically reopening his motion to suppress during trial. But "[t]o hold that appellate review is limited to facts adduced at the pretrial hearing under circumstances such as these could place the appellate court in [an] untenable position" of pretending that Vitela did not introduce evidence relevant to his Fourth Amendment standing, which the trial court included in its ruling. *See Webb v. State*, 760 S.W.2d 263, 273 n.13 (Tex. Crim. App. 1988).

We overrule Vitela's argument regarding the trial court's ruling on his motion to suppress the black box evidence.

**ADMISSIBILITY OF BLACK BOX EVIDENCE, STATE'S EXPERT TESTIMONY UNDER *DAUBERT***

**A. Parties' Arguments**

Vitela argues that the State's expert witnesses lacked adequate expertise and should not have been permitted to testify. He also argues that the black box evidence associated with his car was unreliable because the black box police discovered on the passenger seat of his car was not of the same make as his car,[7] the data itself showed many errors, and it was unclear how the data

---

[7] The black box was labeled Subaru, though his vehicle was a Toyota.

related to Vitela's crash, if it corresponded at all. At trial, he challenged the admissibility of this evidence under *Daubert*, but the trial court overruled his objection.

The State argues that Vitela waived his argument in part by not objecting to the science underlying the black box evidence at trial. The State further argues that its expert witnesses were qualified to assist the jury in deciding the case, and that Vitela suffered no prejudice from the evidence admitted through the State's expert witnesses because Vitela offered and admitted similar evidence.

**B.     Standard of Review**

An appellate court reviews a trial court's admission of evidence and expert testimony for an abuse of discretion, i.e., whether the trial court's ruling was within the zone of reasonable disagreement. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000) (citing *Prystash v. State*, 3 S.W.3d 522, 527 (Tex. Crim. App. 1999); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990)).

**C.     Applicable Law**

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702; *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019); *Wooten v. State*, 267 S.W.3d 289, 297 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). In other words, to testify as an expert, a witness must be qualified in their area of testimony, the area of testimony must be appropriate for an expert witness, and the anticipated testimony should help the jury decide the case. *Rhomer*, 569 S.W.3d at 669 (citing *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006)). But "[t]his is not the same thing as requiring every expert to be the best possible witness." *Id*. at 670. For example, additional education might make a witness more

authoritative on a topic but may not be necessary to adequately help a jury decide a case. *See id*. In fact, "experience alone can provide a sufficient basis to qualify a person as an expert." *Carter v. State*, 5 S.W.3d 316, 319 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). Ultimately, the decision to allow a witness to testify as an expert lies within the sound discretion of the trial court and will not be overturned absent an abuse of discretion. *See id.* at 320.

Furthermore, the data that an expert might analyze is not likely to be precluded at trial or censured on review unless it is too unreliable to help the jury decide the case. *See Tex. Workers' Comp. Comm'n v. Garcia*, 862 S.W.2d 61, 105 (Tex. App.—San Antonio 1993), *rev'd on other grounds*, 893 S.W.2d 504 (Tex. 1995) (citing *Thompson v. Mayes*, 707 S.W.2d 951, 956 (Tex. App.—Eastland 1986, writ ref'd n.r.e.)). Evidence is usually accepted in relevant scientific fields which are not new or novel. *LaBorde v. Shelter Mut. Ins. Co.*, 80 So. 3d 1, 1–2 (La. Ct. App. 2011). Introducing black box evidence in a collision case, for example, is not new or novel. *See id.* (citing *Commonwealth v. Zimmermann*, 873 N.E.2d 1215 (Mass. App. Ct. 2007); *Matos v. State*, 899 So. 2d 403 (Fla. Dist. Ct. App. 2005); *State v. Shabazz*, 946 A.2d 626 (N.J. Super. Ct. Law Div. 2005)). Such evidence may be subjected to rigorous cross-examination at trial. *See, e.g., In re Melton*, 597 A.2d 892, 903–04 (D.C. 1991). But objections to its reliability will most likely go to the weight of the evidence rather than to its admissibility. *Id*. (citing *Bertolotti v. Dugger*, 883 F.2d 1503, 1517 (11th Cir.1989), cert. denied, 497 U.S. 1032 (1990)).

**D.     Analysis**

The State's expert witnesses in this case were both crash investigators for the Texas Department of Public Safety. The lead investigator, Trooper Kendrick, testified that he had been an officer with DPS for over eleven years. He testified that he first received crash investigation training at the DPS academy, and then later went on to attend two additional crash schools with DPS. As a highway trooper, investigating crash scenes was part of his job duties. Trooper

Kendrick estimated that over the course of his career, he had worked hundreds of crash scenes. In this case, Trooper Kendrick measured the skid marks at the crash scene, inspected Vitela's car, and he collected the black box evidence. He also used computer software and crash investigation equipment to determine a drag factor for Scenic Loop. He testified that this process allowed him to calculate Vitela's minimum speed from the skid mark measurements. Based on Trooper Kendrick's DPS training and extensive experience, we cannot agree with Vitela that it was an abuse of discretion to allow Trooper Kendrick to testify regarding the crash investigation he conducted in this case. *See Rhomer*, 569 S.W.3d at 669.

Trooper Bacon assisted Trooper Kendrick in the crash investigation. At trial, Trooper Bacon testified that he had worked for DPS for fifteen years and attended all six levels of crash school offered by DPS as well as several continuing education conferences. Part of his job duties included investigating crash scenes. In this case, Trooper Bacon was responsible for downloading black box data. At trial, he provided context for data obtained from the black box, including errors listed in the data printout, and he offered expertise in crash investigations generally. Based on Trooper Bacon's significant training and experience in this area, we cannot conclude that the trial court abused its discretion by allowing Trooper Bacon to testify regarding crash investigations. *See id*.

Furthermore, the black box data was not too unreliable to admit for the jury's consideration, especially considering that the evidence did not stand alone, and it was corroborated by other evidence at trial. *See Garcia*, 862 S.W.2d at 105. Given that black box data is neither new or novel, the trial court did not abuse its discretion by admitting the evidence and allowing parties to examine and explain its significance for the jury to consider. *See LaBorde*, 80 So. 3d at 1–2. We overrule Vitela's arguments pertaining to *Daubert*.

**LEGAL SUFFICIENCY**

**A.      Parties' Arguments**

Vitela argues that the evidence against him was legally insufficient to establish that his crash on Scenic Loop was due to criminal negligence.  The State argues that the evidence against Vitela was legally sufficient to establish that he committed criminally negligent homicide and that his convictions should be affirmed.

**B.      Standard of Review**

When determining whether there is sufficient evidence to support a conviction, the reviewing court "consider[s] the combined and cumulative force of all admitted evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom, a jury was rationally justified in finding guilt beyond a reasonable doubt." *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)); *accord Brooks v. State*, 323 S.W.3d 893, 894 (Tex. Crim. App. 2010). "Because the jury is the sole judge of the credibility of witnesses and of the weight given to their testimony, any conflicts or inconsistencies in the evidence are resolved in favor of the verdict." *Espino-Cruz v. State*, 586 S.W.3d 538, 543 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd) (citing *Jackson v. State*, 530 S.W.3d 738, 741–42 (Tex. App.—Houston [14th Dist.] 2017, no pet.)). "The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt." *Gamelin v. State*, No. 14-08-00977-CR, 2010 WL 1037944, at *2 (Tex. App.—Houston [14th Dist.] Mar. 23, 2010, no pet.) (citing *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991)).

**C.      Applicable Law**

For the jury to convict Vitela of criminally negligent homicide, the jurors had to agree that the State proved beyond a reasonable doubt that Vitela caused Smith's death and that he ought to

have been aware of the substantial and unjustifiable risk posed by speeding down Scenic Loop of possibly crashing and causing a person's death. *See* TEX. PENAL CODE ANN. §§ 6.03(d), 19.05; *Stadt v. State*, 182 S.W.3d 360, 364 (Tex. Crim. App. 2005) (citing *Aliff v. State*, 627 S.W.2d 166, 171 (Tex. Crim. App. 1982)). The jurors also had to agree that the risk was of such a nature and degree that the failure to perceive it was a gross deviation from the standard of care that an ordinary person would exercise in Vitela's position. *See* TEX. PENAL CODE ANN. §§ 6.03(d), 19.05; *Stadt*, 182 S.W.3d at 364 (citing *Aliff*, 627 S.W.2d at 171).

## D.    Analysis

Five seconds before Vitela entered a curve in the road and crashed into a tree, the black box from his car recorded his speed at 115 miles per hour. In the following seconds, the event data recorder documented Vitela's diminishing speed as he neared the crash site: 113.7, 113.1, 110, 106.9, 101.9, 95.7, and 85.7 miles per hour. In the final second before the crash, the black box recorded Vitela's decreasing speeds as 80.8, 67.1, and 64.6 miles per hour. The lead crash investigator for the State measured skid marks in the road and gleaned through his training and experience that Vitela's minimum possible speed just before he collided with the tree would not have fallen below 61.7 miles per hour. Vitela's expert witness estimated that Vitela was driving 88 miles per hour at some point before the collision and that Vitela was driving 66 miles per hour where the car's skid marks began.

As noted by the State, the speed limit approaching the curve was posted as 15 miles per hour. One eyewitness to the crash who lived directly off Scenic Loop testified that Vitela was audibly speeding faster than he had previously heard at that stretch of road. As Vitela attempted the curve, the eyewitness said aloud, "He ain't going to make it." Vitela then missed the turn and crashed into a tree, killing his friend. In reviewing all of the evidence taken together and resolving any discrepancies in favor of the verdict, we conclude that it was not unreasonable for the jury to

find beyond a reasonable doubt that Vitela failed to perceive a substantial and unjustifiable risk that he could crash his car and kill or injure his passengers by driving about fifty miles per hour over the posted speed limit when he entered the fatal curve, and that it was a gross deviation from the standard of care that an ordinary person would exercise in Vitela's position.

We overrule Vitela's sufficiency argument and next address his improper argument issue.

### IMPROPER ARGUMENT BY THE PROSECUTOR DURING CLOSING STATEMENTS

**A.      Parties' Arguments**

Vitela argues that the prosecutor's closing argument contradicted trial evidence, injected new harmful facts to the jury, and the court's instructions did not cure the impact of the prosecutor's statements so that Vitela would likely not have been convicted but for the statements' injurious effect. The State argues that the prosecutor's statements were proper, that the trial court's instruction to disregard the prosecutor's statements was effective, and Vitela did not consistently make the correct objection.

**B.      Standard of Review**

An appellate court reviews a trial court's denial of a mistrial for abuse of discretion. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007).

**C.      Applicable Law**

"In order to be appropriate, jury argument must fall within one of the following areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) a plea for law enforcement." *Pittman v. State*, 9 S.W.3d 432, 434 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (citing *Hughes v. State*, 878 S.W.2d 142, 157–58 (Tex. Crim. App. 1992)). To be reasonable, "a deduction may only be based upon evidence which was actually introduced." *Id*. (citing *Lovelace v. State*, 662 S.W.2d 390, 392 (Tex. App.—Dallas 1983, pet. ref'd untimely filed)).

If a prosecutor's closing argument is found to be improper on review, the appellate court must determine whether the improper argument warrants reversal. *Id*. (citing *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998), cert. denied, 526 U.S. 1070 (1999)). "The following three factors are used to analyze the harm associated with improper jury argument: (1) severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Jones v. State*, 38 S.W.3d 793, 797 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (citing *Mosley*, 983 S.W.2d at 260). Instructions to disregard are presumed to be complied with by the jury. *Archie*, 340 S.W.3d at 741.

## D.     Analysis

During the prosecutor's closing argument, Vitela made two requests for a mistrial after the State argued in the first instance that Vitela drove around the fatal curve at 113 miles per hour, and in the second instance that Vitela drove 115 miles per hour around the curve. After the first instance, Vitela objected to facts not in evidence, and the trial court agreed that there was no evidence to support the argument that Vitela drove 113 miles per hour around a curve. The trial court instructed the prosecutor to remove a slide related to the improper argument and instructed the jury to disregard the statement. The trial court denied Vitela's first request for a mistrial. Immediately following the bench conference, the prosecutor said, "Recklessness: driving 115 miles per hour around a curve." Vitela objected to facts not in evidence, and the trial court instructed the prosecutor to return for another bench conference, explaining for a second time why such an argument could not be based on the evidence elicited during trial. The prosecutor clarified what she could properly argue, and Vitela requested a mistrial once more, which the trial court

again denied. After closing arguments, the jury acquitted Vitela of manslaughter and convicted him of negligent homicide.

We agree that the prosecutor's statements at issue were not based on the evidence elicited at trial and were therefore improper. However, we do not agree that the statements caused Vitela to be convicted when he otherwise might not have been. First, the jury is presumed to have followed the trial court's instruction to disregard the prosecutor's argument regarding the speed at which Vitela drove around the curve where the crash occurred. It must have been clear to the jury that the prosecutor was called to the trial court's bench for correction each time she claimed that Vitela was driving over one hundred miles per hour in the fatal curve, and that she had to change her closing argument as a result. During trial, the jury heard both parties' expert testimony regarding Vitela's speed up to the point of collision. Nowhere does the record reflect that the jury substituted the prosecutor's statements for the actual evidence, especially considering that Vitela was acquitted of manslaughter. Second, the trial evidence supported a jury finding that Vitela disregarded a substantial and unjustifiable risk that he should have perceived, and that it was a gross deviation from the standard of care that an ordinary person would have taken in his position. *See Jones*, 38 S.W.3d at 797. Vitela's data recorder documented his speed at 115 miles per hour five seconds before his collision. Vitela's expert witness estimated that Vitela was driving 66 miles per hour where his skid marks began. The State's expert calculated that Vitela's speed would not have fallen below 61.7 miles per hour just before he collided with the tree. The posted speed limit for the curve was fifteen miles per hour, significantly lower than any of the evidence established as Vitela's speed at the time. For these reasons, we overrule Vitela's argument regarding the prosecutor's improper statements.

**CONCLUSION**

We conclude that the trial court did not abuse its discretion by admitting Vitela's black box as evidence after determining that Vitela abandoned his car and lacked standing to challenge the evidence seized from it. Likewise, the trial court did not abuse its discretion by allowing the State's crash investigators to testify regarding their investigation and on their reading of the crash data from the black box. We also conclude that the evidence was legally sufficient to establish that Vitela caused Smith's death when he drove at a high rate of speed into a curve, disregarding a substantial and unjustifiable risk that he should have perceived, and that it was a gross deviation from the standard of care that an ordinary person would have taken in his position. Lastly, we conclude that while the State made an improper argument regarding the speed at which Vitela drove around the curve where the crash occurred, the trial court effectively corrected the State's argument and instructed the jury to disregard the unfounded statements. Vitela did not show he would likely not have been convicted absent the State's conduct.

We overrule Vitela's issues on appeal and affirm the judgment of the trial court.

Patricia O. Alvarez, Justice

PUBLISH