## State of Vermont v. Marlene G. Carmody

[442 A.2d 1292]

No. 352-79

Present: Barney, C.J., Larrow, Billings, Hill and Underwood, JJ.

Opinion Filed February 2, 1982

*David G. Miller,* Franklin County State's Attorney, and *Marianne Lipscombe* and *Edward D. Fitzpatrick,* Deputy State's Attorneys, St. Albans, for Plaintiff.

*James L. Morse,* Defender General, *William A. Nelson,* Appellate Defender, and *Jacqueline Majoros,* Law Clerk (On the Brief), Montpelier, for Defendant.

**Barney, C.J.** A little after three o'clock in the morning on March 30, 1979, a St. Albans police officer stopped a car which was weaving back and forth on the highway to the

point of crossing the center line. After the stop the officer walked up to the car and found the driver, the defendant, slumped over the wheel. When asked for her license and registration she fumbled with her purse and spilled the contents onto the floor. The officer asked her to step back to the cruiser. When she attempted to get out of the car she started to fall, but was caught by the officer. She then made her way to the cruiser by holding onto the car. Her breath smelled of alcoholic beverages. Upon the arrival of a second officer the defendant was taken to the police station for processing for driving while intoxicated.

Although she was stumbling and unsteady, with the help of the two officers the defendant made it into the police station. Once there, although she claimed to be able to do any physical test asked of her, she was not. She fell against the wall doing the heel-to-toe walking test and could not manage to touch her nose with her fingertip.

Although she had been insisting from the time she had been stopped that she would not take a breath test and that she would not go through a CRASH program again, the defendant was read the Implied Consent Law, 23 V.S.A. § 1202, as a preliminary to being asked for a breath test. Although she indicated she did not want to consult with an attorney, she did ask to be allowed to call her boyfriend. This request was denied by the police, but at the completion of the processing, and after thirty minutes had passed and she had refused to take a breath test, the police did call her boyfriend for her. A citation was prepared and tendered, which she refused to accept, but at no time was the defendant put under arrest.

Five days later a so-called "refusal" hearing was held to determine under 23 V.S.A. § 1205(a), whether the defendant's conduct amounted to a refusal to take the test for alcoholic blood content, so that the license suspension authority would apply. The defendant contended that the fact that she had not been allowed to make a phone call to her fiance invalidated the station house procedure, and that therefore she ought not to be treated as having refused under the statute. The hearing judge disagreed and ruled her conduct to be a refusal subject to penalty.

Since the statute also makes the fact of refusal admissible evidence in the trial for driving while intoxicated itself, to

forestall that result the defendant moved to suppress the refusal proceedings. A hearing was had on this issue under V.R.Cr.P. 12(b). The trial judge, being the same judge as had heard the evidence at the refusal hearing, ordered the trial to proceed and said that he would rule on the issue as it arose during trial. On the raising of the issue by the evidence presented at trial, the court allowed the defendant's refusal to take a breath test to come in, leaving the jury free to draw such inferences from it as they reasonably might.

We agree with the State that the better practice would have been to hold a full hearing, with findings and order, on the suppression motion. But that was done in the refusal hearing, and the facts were set out in those findings. Nor is there any doubt about the court's position with respect to the requested suppression since the evidence was admitted in the face of renewed objection.

However, we cannot agree with the rulings at either the refusal hearing or trial regarding the admission of the evidence relating to refusal. Both sides speak of the "right" to make a phone call, but the concern of this Court is with the assumption of the right to deny the defendant the opportunity to make such a call.

The defendant was not under arrest. The legislature has made the sanction of license suspension available for refusal to take one of the specified tests measuring the alcoholic content of blood or breath whether or not there is an arrest, *State* v. *Auger*, 124 Vt. 50, 56, 196 A.2d 562, 566 (1963), and such custody is not a necessary prerequisite to its validity. But the statute involved gives any person in the defendant's situation a time period of thirty minutes to decide whether or not she will undergo the intoximeter test, 23 V.S.A. § 1202(c), and since the police elected not to exercise any custodial authority over her during that period, such as that generated by the procedure of arrest, their authority over her person was correspondingly limited.

So the question before us comes down to the measure of physical control the police are permitted to exercise over a defendant in such cases and under the authority of the relevant statutes, and the consequences, if any, of abuse of that authority. This immediately focuses our attention on the stat-

utory significance of the thirty minute wait already noted that triggers the refusal determination. Does the law create a dilemma for the police officers?

That question is answered in the negative. Although the law is not explicit, its limits as applied to this case are determinable. The law presumes that a defendant will remain in the presence of the police long enough for them to carry out the provisions of the testing procedure. The possible consequences of a failure by a defendant to do so need not detain us in this case, since this defendant did remain without arrest.

The reduction of any defendant to custody, giving the police authorized control over the person, is a serious liberty restriction governed by stated legal prerequisites. When such control is exercised in the absence of an arrest, it is either treated as unauthorized, or as a de facto arrest, whichever best protects the interests of the defendant and society. Under these circumstances, where the State has foregone any claim of an arrest or entitlement to benefits which would flow from our finding of one, we cannot say that de facto arrest occurred, and the refusal to allow the defendant to make the requested phone call must be considered an unauthorized restraint on her, absent any indication that the call was sought in bad faith or with a view toward disrupting authorized police activity.

The defendant argues that this sort of restraint was sufficient to flaw the refusal proceedings and, further, to render evidence of that refusal inadmissible on trial. We must agree.

The legislature specifically demonstrated its concern that any refusal to be tested not be lightly decided, by providing for counsel and for time for reflection. To allow unauthorized police action to cloud the otherwise voluntary nature of the decision to refuse testing would be inconsistent with that concern. Since the impact of actions seen as coercive or restrictive is almost impossible to measure after the fact, as we have noted in connection with improprieties directed at juries, we are compelled to the position that a mere demonstration that such actions occurred creates a flaw in the procedure. *Bellows*

*Falls Village Corp.* v. *State Highway Board,* 123 Vt. 408, 414, 190 A.2d 695, 699 (1963).

The consequence of our rejection of the evidence of refusal to take the intoximeter and blood tests is, of course, a remand for a new trial without the inadmissible material. This result makes review of a second issue raised in this appeal appropriate, since it quite probably will recur on retrial, *Mislosky* v. *Wilhelm,* 130 Vt. 63, 70–71, 286 A.2d 267, 272 (1971).

The defendant complains of the trial court's charge to the jury in the language of our prior cases which define "under the influence of intoxicating liquor" in terms of being "under the influence in the slightest degree." See, e.g., *State* v. *Storrs,* 105 Vt. 180, 185, 163 A.2d 560, 562 (1933). It is her contention that the meaning of "under the influence" has been altered since *Storrs* by changes in the statutes relating to the offense of driving while intoxicated. Her position is based on the statutory enumeration of three grounds upon which conviction can be based:

A person shall not operate, attempt to operate, or be in actual physical control of any vehicle on a highway while:

(1) there is .10 per cent or more by weight of alcohol in his blood, as shown by analysis of his breath or blood; or

(2) under the influence of intoxicating liquor; or

(3) under the influence of any other drug or under the combined influence of alcohol and any other drug to a degree which renders him incapable of driving safely.

23 V.S.A. § 1201(a).

The third ground contains language speaking of "a degree which renders him incapable of driving safely." This phrase, says the defendant, should be "read into" or treated as modifying the standard of subsection (2), which retains the phrase "under the influence of intoxicating liquor."

It is an axiom of statutory interpretation that the retention of prior language, which has a history of meaning ascribed to it by statutory interpretation or usage reaffirmed

by court decision, in an amended statute, is taken to mean that the legislature intended to retain that interpretation. The meaning of "under the influence" was developed in our cases at a time before the use of chemical tests of any kind. Its relevance has always been to physical manifestations capable of observation by a witness and reported by testimony. To support a claim of "under the influence" requires observable behavior indicating a loss of full control over the faculties of mind and body, as the *Storrs* case states. With this a witnessed fact, the measure of that loss is not material, and the violation of that portion of the statute is sufficiently established.

It is important for the trial court to see that this charge on "under the influence" be applied only in cases where testimony supports a claim of loss of control of physical and mental faculties, and not where the evidence deals solely with the chemical level of alcohol. But the proposition that the legislature has retreated from the position that it is impermissible to operate a motor vehicle with impaired mental or physical faculties due to alcohol is unacceptable.

*Reversed and remanded for a new trial.*