## State of Vermont v. Aime M. Robitaille

[561 A.2d 412]

No. 87-054

Present: Allen, C.J., Peck, Dooley and Morse, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed April 14, 1989

*Joel Page, Lamoille County State's Attorney*, Hyde Park, and *Gary Kessler, Resource Attorney*, Montpelier, for Plaintiff-Appellee.

*Walter M. Morris, Jr., Defender General*, and *William A. Nelson, Appellate Defender*, Montpelier, for Defendant-Appellant.

**Morse, J.** Defendant was convicted of driving under the influence of intoxicating liquor. He makes two claims on appeal: that he was denied an opportunity to have a valid independent analysis of his breath, and that the trial court committed plain error in its instruction to the jury on the blood-alcool presumption. We disagree with both claims, and affirm.

## I.

### Independent Analysis

■ In DUI cases involving chemical analysis of breath, 23 V.S.A. § 1203(a) requires that

> a sufficient amount of breath . . . shall be taken to enable the person, at his option, to have made an independent analysis of the sample . . . .

Analysis of the sample for the State and the defendant are considered valid if done in accordance with procedures promulgated by the Vermont Department of Health.

Prior to trial, defendant moved to suppress the results of a breath test based upon a stipulation of facts entered into by the parties. The stipulation provided that a sample of defendant's breath was collected in the usual way, that is, captured in a metal (indium) tube which was crimped to create three separate units. The State laboratory, as is its practice, analyzed two of the three portions and obtained results of .154 blood alcohol content (BAC) and .145 BAC. At defendant's request, the third portion was independently analyzed, with a result of .14 BAC. As to the State's testing procedure, the parties agreed to the following:

> When the two (2) State test results vary more than + or - 5% of their mean the State Lab discards the test results and reports no result. . . . The State's procedure of testing two (2) results is *the required testing method* and discrepancies of + or - 5% of the mean are relied upon by State chemists as an indication that the procedure has been significantly flawed and that the process and result should be invalidated.

(Emphasis added.)[1] Defendant argued that he was provided with an amount of breath, only one unit, insufficient to permit a valid analysis of his BAC according to 23 V.S.A. § 1203(a) and the Health Department regulations. In other words, according to defendant, if the State must have two units to conduct a valid test, so must the defendant. The motion was denied.

Although there is a superficial allure to defendant's argument, it does not withstand analysis. The reason for the test of the second sample is to check the reliability of the first. The integrity of the testing may be in doubt due to flaws in the testing equipment, the taking of the sample, or the sampling equipment. If two tests produce similar results, the validity of the results is relatively high according to departmental regulation. If the two results vary more than 5% of their mean, however, the integrity of the tests is sufficiently in doubt to warrant discarding the results.

Defendant does not quarrel with the 5% rule, but insists that he is entitled independently to apply a 5% rule to two additional tests. It is evident, however, that such a procedure would in fact provide a third and fourth check on the first result. There is nothing in the statutes or regulations that might require more than a second validation of the test run by the State. Rather, we view the independent analysis permitted the defendant as a check on the integrity of the procedures of the police and Health Department, not as a validation or invalidation of any particular reading. See *State* v. *Normandy*, 143 Vt. 383, 386, 465 A.2d 1358, 1360 (1983) ("independent sample provision . . . solely to provide defendant with the ability to verify the results obtained by the state police chemists").[2]

---

[1] The State maintains on appeal that the regulations of the Health Department do *not* require two analyses of breath but only that the "instrumentation shall be capable of analyzing duplicate portions of a breath sample with precision of plus or minus 5% from their mean." It is the Department's practice, however, to test two of the three portions. Given the parties' stipulation, we need not decide whether one test is sufficient. See *State* v. *Dole*, 141 Vt. 493, 494, 449 A.2d 979, 980 (1982) ("two consistent samples [are required] for a valid analysis.").

[2] We need not decide whether a variance of more than 5% of the mean between independent and State tests requires suppression of the test results because the results here were within the tolerance factors.

## II.

*Blood-alcohol Presumption*

■ The court instructed the jury as follows:

> Now, if you find beyond a reasonable doubt that the laboratory analysis used in this case . . . was valid, that the test was adminstered properly, that the test results were accurate and trustworthy, and that at the time of the test sample being collected there was .10 percent or more by weight of alcohol in the Defendant's blood, then you are permitted under the law to infer that the Defendant was under the influence of intoxicating liquor at the time the test sample was collected. Because the law is concerned about the level of alcohol in the Defendant's blood at the time he may have been operating the vehicle, you may make the inference that the Defendant was under the influence of intoxicating liquor at the time of the alleged operation only if the State is able to show through the use of expert testimony that the test results relate back to the actual time of alleged operation.

No objection was made to this portion of the charge,[3] but defendant claims it was plain error because no reasonable juror could have found on the record that defendant's BAC was .10 or more at the time of operation.

The State chemist testified that in his opinion defendant's BAC at the time of operation was .14. In order to convert a breath sample reading to BAC, the chemist used a blood-to-breath ratio of 2100:1 ("For every twenty-one hundred parts of alcohol in the blood, there is one in breath."). The 2100:1 ratio is the conversion ratio provided for in the Health Department regulations and is an average.

On cross-examination, the chemist conceded that the ratio varied from 1375:1 to 3000:1 in individual cases. No evidence was elicited showing the incidence of various ratios along this scale.[4] Nor was there evidence of the physical characteristics of people at either end of the scale. Defendant demonstrates that if he actu-

---

[3] In fact, defendant himself requested that this charge be given.

[4] For instance, no evidence showed whether relatively more readings fell at the extremes or clustered around the mean.

ally fell at the low end of the scale (at 1375:1), his BAC in this case would have been .09.

Defendant, citing V.R.E. 303(c), maintains that the State did not meet its burden to establish by sufficient evidence the existence of the basic fact (the BAC), necessary to support the presumption that he was under the influence of alcohol. We disagree.

The State need not, in every DUI prosecution relying on a breath test, "reinvent the wheel" by demonstrating the soundness of the procedures for calculating the BAC of the accused. The legislature authorized the Department of Health to select methods of analysis which "shall be considered valid" if properly performed. 23 V.S.A. § 1203(a). See *State* v. *Mills,* 133 Vt. 15, 16-17, 328 A.2d 410 411 (1974). Attacks on scientific underpinnings of the ratio are open to the defense, but it is for the jury, under proper instructions, to resolve those issues. See *State* v. *Rollins,* 141 Vt. 105, 112, 444 A.2d 884, 888 (1982).

The jury was instructed on the presumption in accordance with defendant's request to charge. We find no error.

*Affirmed.*