## State of Vermont v. Frank M. Zumbo

[601 A.2d 986]

No. 90-073

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed November 8, 1991

Motion for Reargument Denied December 13, 1991

*William Sorrell,* Chittenden County State's Attorney, Burlington, *Gary S. Kessler,* Supervising Appellate Prosecutor, Montpelier, and *Geoffrey M. Coan,* Student Intern, Vermont Law School (On the Brief), for Plaintiff-Appellee.

*Jane Watson* and *Robert W. Zeuner* of *Bauer, Gravel & Watson,* Burlington, for Defendant-Appellant.

**Gibson, J.** Defendant Frank Zumbo appeals from his conviction for operating a motor vehicle while under the influence of intoxicating liquor, in violation of 23 V.S.A. § 1201(a)(2), arguing that (1) his constitutional and statutory rights were violated by the jury selection process, (2) the trial court abused its discretion when it denied his motion to suppress, (3) the court erred in allowing a police officer to testify that in his opinion defendant was under the influence of intoxicating liquor, (4) the court erred in failing to instruct the jury on the permissive inference under 23 V.S.A. § 1204(a)(1), and (5) the court erred in using the *Storrs* jury instruction. We affirm.

I.

Defendant first contends that Chittenden County's jury selection procedures violate his federal and Vermont constitutional rights, as well as his statutory rights. The instant case is one of forty-four previous interlocutory appeals presenting the same argument; forty-three cases, including the instant case, were dismissed on grounds that the interlocutory appeals had been improvidently granted. See *State v. Jenne,* 156 Vt. 283, 288, 591 A.2d 85, 88 (1991). The other case—*Jenne*—was addressed on the merits, and for the reasons expressed therein,

we reject defendant's contention. See *id.* at 288–93, 591 A.2d at 88–91.

## II.

### A.

■■ Defendant next argues that *State v. Senecal*, 145 Vt. 554, 558, 497 A.2d 349, 351 (1985), and its progeny require the trial judge to reevaluate the merits of a motion to suppress whenever a different judge had ruled on the motion prior to trial. Thus, in the instant case, defendant contends that, although no new facts were adduced at trial, the trial judge committed reversible error by failing to reconsider the motion to suppress, which had been denied before trial by Judge Cashman following an evidentiary hearing. As we stated in *Senecal*, pretrial rulings are tentative and subject to revision, *id.*, but *Senecal* and its progeny do not require the trial judge to reevaluate all decisions made by a prior judge. Where no new facts are adduced at trial, it would be counterproductive and a waste of judicial resources to require redetermination of a pretrial ruling by the trial judge. *State v. Bruno*, 157 Vt. 6, 8 n.1, 595 A.2d 272, 274 n.1 (1991) (for reasons of judicial economy, "trial court reconsideration of pretrial suppression rulings is to be the exception, not the rule"). We shall not require a trial judge to reconsider a pretrial decision under such circumstances. Accordingly, the trial judge did not abuse his discretion when he declined to reconsider the pretrial decision.

### B.

Defendant also contends that the motion to suppress was erroneously denied by Judge Cashman. In response to questions from a police officer, defendant made a series of incriminating statements while he was in his vehicle and during the administration of a field sobriety test. He argues that, pursuant to Chapter I, Article 10 of the Vermont Constitution, *Miranda* warnings are required at all roadside stops or, at the latest, once the police officer has probable cause to believe that the individual has committed or is in the process of committing a crime. He further contends that the officer had probable cause—and should have given him *Miranda* warnings—after

the officer had noted his erratic driving, watery and bloodshot eyes, slurred speech, and the odor of intoxicants.

■■ Under the federal constitution, the suppression court correctly determined that defendant was not "in custody" at the time he made his incriminating statements. See *Pennsylvania v. Bruder*, 488 U.S. 9, 9–11 (1988); *Berkemer v. McCarty*, 468 U.S. 420, 437–39 (1984); *State v. Lancto*, 155 Vt. 168, 170–72, 582 A.2d 448, 448–50 (1990). Although we have explicitly adopted *Miranda* under Chapter I, Article 10, *State v. Brunelle*, 148 Vt. 347, 355 n.11, 534 A.2d 198, 204 n.11 (1987), we have not had occasion to address whether the Vermont Constitution requires *Miranda* warnings in circumstances where the federal constitution would not. Cf. *In re E.T.C.*, 141 Vt. 375, 378, 449 A.2d 937, 939 (1982) (stricter requirements under Vermont Constitution for juvenile's waiver of *Miranda* rights). Defendant bears the burden of providing an explanation of how or why the Vermont Constitution provides greater protection than the federal constitution. *State v. Gleason*, 154 Vt. 205, 212, 576 A.2d 1246, 1250 (1990); *State v. Ryea*, 153 Vt. 451, 454, 571 A.2d 674, 675 (1990).

■ In support of his proposed rule, defendant strenuously contends that one does not reasonably feel free to leave an ordinary traffic stop. This argument, however, was answered in *Berkemer v. McCarty*, 468 U.S. 420 (1984). Justice Marshall rejected the argument on grounds that the ordinary traffic stop is a temporary and brief detention that is exposed to public view and thus less police-dominated than the kinds of interrogation at issue in *Miranda. Id.* at 437–39. Defendant fails to provide a substantive analysis as to why the Vermont Constitution should provide a different answer for his argument than the federal constitution. See *State v. Jewett*, 146 Vt. 221, 222, 500 A.2d 233, 234 (1985). Nor are we convinced by defendant's lengthy quotation from *Commonwealth v. Bruder*, 365 Pa. Super. 106, 111–12, 528 A.2d 1385, 1387–88 (1987), which was reversed by the United States Supreme Court in *Pennsylvania v. Bruder*, 488 U.S. 9 (1988). Although *Commonwealth v. Bruder* refers to a "Pennsylvania rule," subsequent Pennsylvania cases suggest that the "rule" is similar if not identical to the federal rule. See, e.g., *Commonwealth v. Gonzalez*, 519 Pa. 116, 124, 546 A.2d 26,

29–30 (1988); *Commonwealth v. Toanone*, 381 Pa. Super. 336, 347, 553 A.2d 998, 1001–03 (1989); *Commonwealth v. Ellis*, 379 Pa. Super. 337, 350–59, 549 A.2d 1323, 1329–34 (1988). We note that defendant has made no argument based upon the Vermont Constitution's text or its history. On this record, we are not persuaded that Chapter I, Article 10 of the Vermont Constitution requires *Miranda* warnings at an ordinary traffic stop.

## III.

■ ·Defendant argues that the trial court erred by allowing the police officer to testify that, in his opinion, defendant was slightly to moderately intoxicated, on grounds that the testimony goes to an ultimate conclusion of law. We have previously addressed this argument and have held nearly identical testimony to be admissible where a sufficient foundation was established. See *State v. LeBeau*, 144 Vt. 315, 318, 476 A.2d 128, 130 (1984) (testimony that defendant was under the influence of intoxicants held admissible); *State v. Norton*, 134 Vt. 100, 103, 353 A.2d 324, 325 (1976) (same); see also Reporter's Notes, V.R.E. 704 (stating that *Norton* is consistent with V.R.E. 704, and "testimony should not be excluded solely because it coincided with an ultimate issue of fact where it was an otherwise helpful expression of opinion"). Defendant's reliance on *Riess v. A.O. Smith Corp.*, 150 Vt. 527, 556 A.2d 68 (1988), is misplaced. Contrary to defendant's contention, *Riess*, which is grounded in part upon *Norton*, did not change the rule enunciated in *Norton* and *LeBeau*. Instead, *Riess* held that the questions asked by counsel in that negligence action were improper because they, in effect, told the jury "what conclusion to reach" and were thus prejudicial, requiring reversal. *Id.* at 532–33, 556 A.2d at 72. There was no such flaw in this case, and no abuse on the part of the trial court in allowing the evidence.

## IV.

Defendant also argues that the trial court erred by failing to instruct the jury that if defendant's blood-alcohol content was found to be 0.05% or less, then the jury could presume that defendant was not under the influence of intoxicating liquor. During processing, defendant gave a breath sample to the officer. Defendant's expert testified that, if the testimony of de-

fendant's witnesses was accurate, defendant's blood-alcohol content would have been less than 0.05%. Neither party introduced and related back defendant's test results. For the following reasons, we hold that defendant was not entitled to the requested instruction under § 1204(a)(1), as it then read,[1] because the results of his blood-alcohol test were not introduced into evidence and related back to the time of operation.

First, the plain meaning of the statutory language required that the test results be in evidence. Title 23 V.S.A. § 1204(a)(1) provided:

> (a) Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by a person while operating, attempting to operate or in actual physical control of a vehicle on a highway, the amount of alcohol in the person's blood or breath *as shown by analysis of the person's blood or breath* shall give rise to the following permissive inferences:

> (1) If there was at that time 0.05 percent or less by weight of alcohol in the person's blood or breath, it shall be presumed that the person was not under the influence of intoxicating liquor.

(Emphasis added.) In stating that an "analysis of the person's blood or breath shall give rise" to certain inferences, the statutory language plainly contemplated that a test of a blood or breath sample be evaluated, and the result made known and introduced into evidence. In *State v. Lombard,* 146 Vt. 411, 413–14, 505 A.2d 1182, 1184 (1985), we held that a defendant was not entitled to a mandatory presumption of sobriety, under an earlier version of § 1204(a)(1), where neither party introduced or related back the test results. The plain language of the statute did not contemplate a jury instruction pursuant to § 1204(a)(1) in the absence of a test result that had been related back to the time of operation.

Second, the requirement that defendant introduce and relate blood- or breath-test results back to the time of operation, in order to take advantage of § 1204(a)(1)'s permissive inference,

---

[1] The permissive inference of sobriety has since been repealed. 23 V.S.A. 1204(a)(1) (Supp. 1991).

is consistent with the legislative desire to make scientific evidence available at trial. See *State v. Begins*, 148 Vt. 186, 188, 531 A.2d 595, 596 (1987) ("primary purpose of the legislature, in authorizing breath and blood tests, was to make available to law enforcement officers an alternative and more science-related aid in detecting the extent of alcohol impairment"); *McGarry v. Costello*, 128 Vt. 234, 240, 260 A.2d 402, 405 (1969) (purpose of implied consent law is to encourage availability of scientific evidence "as a means to affirm or reject the uncertain opinion of a layman derived from observation of external symptoms of intoxication"). A defendant's option under 23 V.S.A. § 1203(c) of obtaining an independent analysis of a sample furthers this goal. See *State v. Robitaille*, 151 Vt. 380, 382, 561 A.2d 412, 413 (1989) ("we view the independent analysis permitted the defendant as a check on the integrity of the procedures of the police and Health Department"). Restricting availability of the permissive inferences in § 1204 to those instances where the statutorily specified test results were introduced into evidence is consistent with the legislative scheme designed to promote the use of objective, scientific evidence.

Finally, defendant's suggested construction of the phrase "as shown by analysis of the person's blood or breath" would also, if adopted, be applicable to § 1204(a)(3).[2] See, e.g., *Lombard*, 146 Vt. at 413, 505 A.2d at 1183 (§ 1204(a)(3)'s requirement that expert testimony relate test results back to the time of operation also "holds true" for § 1204(a)(1)). Thus, if we were to conclude that the testimony of an expert witness by itself, in the absence of a test result, would suffice to generate an instruction under § 1204(a)(1), then the same principle should apply under § 1204(a)(3). In other words, the State should have the opportunity to present expert testimony and obtain an instruction about intoxication under the (a)(3) inference without having to introduce a test result, based, for example, upon a police officer's observations or the defendant's admissions regarding how

---

[2] 23 V.S.A. § 1204(a)(3), also amended in 1991, provided:

> (3) If there was at that time 0.10 percent or more by weight of alcohol in the person's blood or breath, as shown by analysis of the person's blood or breath, it shall be [a] permissive inference that the person was under the influence of intoxicating liquor in violation of section 1201(a)(2) or (3) of this title.

much he had had to drink. We cannot believe the Legislature intended such a result.

▮ For all of these reasons, we conclude that before a presumption may arise under § 1204(a)(1), the results of a breath or blood test must have been introduced into evidence and related back to the time of operation. In the instant case, the testimony of defendant's expert was not based upon a test or a scientific analysis of a blood or breath sample. Accordingly, the trial court correctly denied defendant's request for a § 1204(a)(1) jury instruction.

V.

Defendant's final argument is that the trial court erred by allowing the language of *State v. Storrs*, 105 Vt. 180, 163 A. 560 (1933), to be used in the State's opening and closing arguments and by itself using *Storrs'* language in the jury instructions.[3] Defendant contends that the 1970 amendment to 23 V.S.A. § 1201 implicitly overruled *Storrs* and that the *Storrs* test is absurd and irrational under the current language of the statute.

▮ In *Storrs*, we stated that

where one, by reason of his indulgence in intoxicating liquor, has ceased to retain full control over his faculties of mind and body, he is under the influence of such liquor, and the extent to which he has lost the use of his mental and physical powers is not material upon this question.

105 Vt. at 185, 163 A. at 563. Since *Storrs* was decided and subsequent to the 1970 amendment, this Court has repeatedly applied the *Storrs* test in criminal proceedings for driving while

[3] The pertinent jury instruction was as follows:

A person who, by drinking intoxicating liquor, has failed to retain full control of the faculties of his mind and body is under the influence of intoxicating liquor. The extent to which he has lost the use of his mental and physical powers is not material to this question. The state need not prove that the Defendant was under the influence of intoxicating liquor to such an extent that his ability to operate a motor vehicle was impaired. However, a person operating a motor vehicle while under the influence of intoxicating liquor in the slightest degree is within the statutory prohibition of operation of a motor vehicle while under the influence of intoxicating liquor.

under the influence. See, e.g., *State v. Abbott*, 151 Vt. 618, 621, 563 A.2d 640, 642 (1989) (reiterating the *Storrs* test and rejecting argument that evidence must show defendant lost full control of physical and mental abilities); *State v. Schmitt*, 150 Vt. 503, 508, 554 A.2d 666, 669 (1988) (this Court has reaffirmed the use of jury instructions containing the "slightest degree" language in case law since 1933); *State v. Stockwell*, 142 Vt. 232, 235, 453 A.2d 1120, 1122 (1982); *State v. Carmody*, 140 Vt. 631, 637, 442 A.2d 1292, 1295 (1982); *State v. Wall*, 137 Vt. 482, 487, 408 A.2d 632, 636 (1979), *cert. denied*, 444 U.S. 1060 (1980); *State v. Norton*, 134 Vt. at 103, 353 A.2d at 326. We have previously rejected defendant's argument that the 1970 amendment of § 1201 overruled *Storrs*. *Carmody*, 140 Vt. at 637–38, 442 A.2d at 1295. The test's longevity and repeated affirmations attest to its rational delineation of the statutory prohibition of driving while under the influence of intoxicating liquor. We accordingly reject defendant's contention that *Storrs* should be overruled.

*Affirmed.*

**Morse, J.**, dissenting. I disagree with the Court's conclusion in Part IV that a defendant must introduce a chemical test to be entitled to a permissive inference that he was not under the influence of intoxicating liquor. I concur with the rest of the opinion.

In *State v. Lombard*, 146 Vt. 411, 413–14, 505 A.2d 1182, 1183–84 (1985), this Court upheld the defendant's conviction for DUI against a claim that he was entitled to, but was refused, a jury instruction explaining the then mandatory presumption of an earlier version of 23 V.S.A. § 1204(a)(1). 23 V.S.A. § 1204(a)(1) (.05 percent or less BAC requires a finding of not under the influence). No test result was introduced nor was any other evidence of defendant's BAC at the time of operation. *Lombard* is distinguishable from this case because the basic fact, the probable BAC, was never introduced in evidence and thus no presumption could apply. In this case, evidence of the defendant's BAC was introduced. Therefore, § 1204(a)(1), amended to allow a *permissive inference* that the person was not under the influence, applies.

The State argues, and the Court today holds, that the plain meaning of 23 V.S.A. § 1204 dictates that the statutory infer-

ence does not apply unless there is a chemical "analysis" in evidence showing "the amount of alcohol in the person's blood or breath at the time alleged." If that is the plain meaning of this statute, it makes no sense.

The inference arises not because a "test" was given, but because certain scientific principles dictate that the percentage of alcohol in the blood follows from varying levels of alcohol consumption. An analysis of these principles allows for the conclusion that a person who consumes one drink will have a BAC of .05 percent or less thereafter. Accordingly, the person should receive the benefit of the statutory inference of not being under the influence.

In the case at hand, such an analysis was introduced into evidence, as the statute requires. Yet the trial court refused to instruct the jury on the permissive inference of § 1204. A particular BAC does not cease to exist at a given moment merely because a "test" was not performed. Nor does § 1204(a)(1) require a test to prove it. The law is not some metaphysical exercise, like determining whether a tree falling in the woods makes no sound unless there is someone there to hear it.

If it is possible to analyze a person's BAC with the required level of scientific precision without doing a laboratory blood or breath test, I see no reason to say the statutory inference is no longer applicable. The inference is either scientifically sound or it is not. See *State v. Bushey*, 149 Vt. 378, 380, 543 A.2d 1327, 1328–29 (1988) (expert testimony admissible absent an admissible test result to calculate number of drinks needed to reach a certain BAC).

A contrary view would mean that the Legislature could discriminate between people who are under .05 BAC and have a test and those under .05 BAC who do not have a test simply because they were not tested, or their test was lost or was inaccurate. We should avoid such an absurd interpretation. See *State v. Rice*, 145 Vt. 25, 34, 483 A.2d 248, 253 (1984) (a statute will not be construed to lead to absurd or irrational results).

The Legislature, when it enacted various inferences for DUI, made policy judgments based on scientific evidence concerning the effects of intoxicating liquor. It was, however, the Legislature's prerogative to determine what percentage of alcohol in the blood constitutes a violation of the criminal law. The Legis-

lature has allowed the trier of fact to determine the effect on the defendant of a BAC of .05 or less with the aid of a statutory inference. It could not legitimately declare that persons with a .05 BAC or less who introduce a test into evidence may be found not guilty of DUI because an inference favors them, while those who prove the same BAC level by expert testimony do not get the benefit of the inference. Obviously, those unlucky enough to be in the latter situation incur a greater risk of being found guilty. Nevertheless, this is the effective result of the majority's narrow interpretation of the word "analysis."

I am mindful that this case has little future impact on DUI law, because the .05 or less BAC inference was repealed by a 1991 amendment. That legislative change notwithstanding, this defendant should have received the full benefit of the prior law.

I would reverse and remand.