# State of Vermont v. Donald L. Porter

[671 A.2d 1280]

No. 94-215

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed January 5, 1996

*Robert L. Sand,* Department of State's Attorneys, Montpelier, for Plaintiff-Appellee.

*Robert Appel,* Defender General, and *William A. Nelson,* Appellate Defender, Montpelier, for Defendant-Appellant.

**Gibson, J.** Defendant Donald L. Porter appeals the imposition of a felony sentence following his conviction for driving under the influence of intoxicating liquor (DUI), third offense. 23 V.S.A. § 1210(d). Defendant argues that the use of a prior, uncounseled DUI conviction to support a felony third-offense sentence violates his federal and state constitutional rights to counsel and is barred by our decision in *State v. Lafountain,* 160 Vt. 313, 316, 628 A.2d 1243, 1245 (1993). Because we decide today that the recent decision of the United States Supreme Court in *Nichols v. United States,* 511 U.S. 738, 746-49, 114 S. Ct. 1921, 1927-28 (1994), comports with the protections afforded under the Vermont Constitution, we affirm.

On September 15, 1993, the Addison County state's attorney charged defendant with DUI. Because defendant had previously been convicted of DUI in 1983 and 1984, he faced a maximum penalty of five years in prison and a fine of not more than $2,500 if convicted of a third DUI offense. 23 V.S.A. §§ 1201(a)(2) & 1210(d). Defendant moved to dismiss the felony-enhancement portion of the DUI charge on the ground that his 1983 conviction had been uncounseled,[1] so that a felony sentence for a third offense would run afoul of this Court's holding in *Lafountain,* 160 Vt. at 316, 628 A.2d at 1245-46. The district court denied the motion to dismiss. Defendant thereupon entered a conditional guilty plea to pursue the instant appeal. The district court sentenced defendant to a minimum of 120 days and a maximum of two years in prison, all suspended except 120 days.

In *Lafountain,* we adopted the standard, articulated by Justice Blackmun in his concurrence in *Baldasar v. Illinois,* 446 U.S. 222, 229 (1980) (Blackmun, J., concurring), that "an uncounseled conviction may not be used to enhance the grading and sentencing of a subsequent offense if the first offense was one which was punishable by more than six months imprisonment or for which the defendant

---

[1] Because he was represented by counsel for his 1984 conviction, defendant does not challenge the authority of the trial court to impose an enhanced sentence for a "second offense" under 23 V.S.A. § 1210(c).

was actually sentenced to a term of imprisonment." 160 Vt. at 316, 628 A.2d at 1245. We recognized in *Lafountain* that *Baldasar* was a per curiam decision of a divided court in which no clear majority opinion had emerged. *Id.* Juridical rules therefore mandated that we interpret *Baldasar* "on the 'narrowest grounds' possible," *id.* (quoting *Marks v. United States*, 430 U.S. 188, 193 (1977)), which we determined to be the standard articulated in Justice Blackmun's concurrence. *Id.*

*Lafountain* involved a sentence enhancement for third-offense driving with license suspended, 23 V.S.A. § 674(b), in which the first offense is a civil violation carrying no prison sentence. See 23 V.S.A. § 2302(c). Consequently, we upheld the defendant's sentence enhancement as not violative of the rule set forth in *Baldasar*. *Lafountain*, 160 Vt. at 317, 628 A.2d at 1246. In the instant case, by contrast, a first-offense DUI conviction is a criminal offense that, at the time of defendant's 1983 conviction, carried a maximum sentence of one year in prison and a fine of $500.[2] 23 V.S.A. § 1210(a) (1978) (current version at 23 V.S.A. § 1210(b)). Because defendant's uncounseled 1983 DUI conviction was punishable by more than six months imprisonment, defendant urges us to reverse his felony sentence as violative of the standard announced in *Baldasar* and adopted by this Court in *Lafountain*.

Last year, however, the United States Supreme Court overruled *Baldasar*. *Nichols v. United States*, 511 U.S. at 748, 114 S. Ct. at 1928. In *Nichols*, the Court reaffirmed its earlier holding in *Scott v. Illinois*, 440 U.S. 367, 373 (1979), that, "so long as no imprisonment was actually imposed, the Sixth Amendment right to counsel did not obtain." 511 U.S. at 746, 114 S. Ct. at 1927; it also expressly endorsed the reasoning of the dissent in *Baldasar* by holding "that an uncounseled conviction valid under *Scott* may be relied upon to enhance the sentence for a subsequent offense, even though that sentence entails imprisonment." *Id.* at 746-47, 114 S. Ct. at 1927. The Court reasoned that sentence-enhancement statutes do not alter the penalty imposed for the earlier conviction, but rather "'penaliz[e] only the last offense committed by the defendant.'" *Id.* at 747, 114 S. Ct. at 1927 (quoting *Baldasar*, 446 U.S. at 232) (Powell, J., dissenting).

In the instant matter, defendant was sentenced to pay a $160 fine following his 1983 uncounseled DUI conviction. Because the 1983

---

[2] The offense now carries a maximum penalty of two years in prison and a fine of $750. 23 V.S.A. § 1210(b).

conviction was thus valid under *Scott*, the use of that conviction to enhance the sentence for the instant offense does not violate defendant's federal constitutional rights, as articulated in *Nichols*.

Defendant contends, however, that the Vermont Constitution, Chapter I, Article 10,[3] provides greater protection than the analogous provisions of the United States Constitution, and that the reasoning of *Nichols* does not comport with defendant's state constitutional rights.

■ We have long recognized that, "as final interpreter of the Vermont Constitution, this Court has final say on what process is due in any given situation." *State v. Brunelle*, 148 Vt. 347, 350, 534 A.2d 198, 201 (1987). Nevertheless, "[d]efendant bears the burden of providing an explanation of how or why the Vermont Constitution provides greater protection than the federal constitution." *State v. Zumbo*, 157 Vt. 589, 592, 601 A.2d 986, 988 (1991). Although we have on occasion found that the Vermont Constitution affords greater rights than the federal constitution, see, e.g., *Brunelle*, 148 Vt. at 353, 534 A.2d at 202-03 (Chapter I, Article 10 bars use of unlawfully obtained evidence for impeachment purposes), we have consistently held that the right to representation by counsel found in Chapter I, Article 10 of the Vermont Constitution confers a right similar to the federal Sixth Amendment right. *Id.* at 352, 534 A.2d at 202; *State v. Rushford*, 127 Vt. 105, 108-09, 241 A.2d 306, 308-09 (1968); *In re Moses*, 122 Vt. 36, 41-42, 163 A.2d 868, 872 (1960), *overruled on other grounds by In re Dobson*, 125 Vt. 165, 168, 212 A.2d 620, 622 (1965).

Defendant argues that, because we grounded our decision in *Lafountain* solely on the federal constitution and did not reach the defendant's state constitutional claim, we need not give *Baldasar* the same interpretation under the state constitution as we did in *Lafountain*. Rather than relying on the Blackmun concurrence in *Baldasar* to define the limits of the Vermont Constitution, defendant urges us to adopt, for state constitutional purposes, the four-justice plurality in *Baldasar*. The *Baldasar* plurality found that the use of a prior, uncounseled conviction to enhance the defendant's sentence for a subsequent conviction violated the defendant's Sixth Amendment right by imposing a prison sentence for the prior, uncounseled conviction. See *Baldasar*, 446 U.S. at 224 (Stewart, J., concurring)

---

[3] "That in all prosecutions for criminal offenses, a person hath a right to be heard by oneself and by counsel; . . . nor can any person be justly deprived of liberty, except by the laws of the land . . . ." Vt. Const., ch. I, art. 10.

("petitioner . . . was sentenced to an increased term of imprisonment *only* because he had been convicted in a previous prosecution in which he had *not* had the assistance of appointed counsel"); *id.* at 227 (Marshall, J., concurring) ("Solely because of the previous conviction the second offense was transformed from a misdemeanor into a felony . . . .").

In *Lafountain*, however, we quoted with approval the language of the United States Supreme Court's decision in *Parke v. Raley*, 506 U.S. 20, 26 (1992), concerning recidivism statutes, and acknowledged the Vermont Legislature's efforts to handle the increasing numbers of repeat offenders by means of recidivism statutes. 160 Vt. at 317, 628 A.2d at 1246. We later expressly recognized that 23 V.S.A. § 1210(d), which imposes a felony sentence for a third DUI conviction, is a recidivism statute. *State v. Tatro*, 161 Vt. 182, 186, 635 A.2d 1204, 1207 (1993). As the United States Supreme Court explained in *Nichols*:

> Enhancement statutes, whether in the nature of criminal history provisions such as those contained in the [Federal] Sentencing Guidelines, or recidivist statutes which are common place [sic] in state criminal laws, do not change the penalty imposed for the earlier conviction. As pointed out in the dissenting opinion in *Baldasar*, "[t]his Court consistently has sustained repeat-offender laws as penalizing only the last offense committed by the defendant."

511 U.S. at 747, 114 S. Ct. at 1927 (quoting *Baldasar*, 446 U.S. at 232) (Powell, J., dissenting).

We believe the reasoning of *Nichols* is consistent with our analysis in *Lafountain* and *Tatro*, and we see no reason to reach a different conclusion under the Vermont Constitution. The Legislature has seen fit to address the problem of repeat drunk-driving by enacting a recidivism statute that imposes enhanced penalties for each subsequent offense. The increased penalty for a subsequent offense does not repunish a defendant for the first offense, but rather punishes with greater severity the last offense committed by the defendant.

Defendant argues, however, that *Nichols* is distinguishable from the present case on two grounds. First, the prior convictions in *Nichols* were introduced only at the sentencing phase, where "the state need prove such conduct only by a preponderance of the evidence," 511 U.S. at 748, 114 S. Ct. at 1928; in contrast, defendant argues, this Court requires the State to allege the existence of one or

more prior convictions as an essential element of a repeat-offender DUI charge, and to prove the allegation beyond a reasonable doubt. *State v. Cameron*, 126 Vt. 244, 249-50, 227 A.2d 276, 279-80 (1967). We believe defendant reads too much into this distinction. Although we require the State to allege prior convictions as an element of the repeat-offender charge, we nevertheless held in *Cameron* that "[t]he fact of a prior conviction or convictions does not become material until after the conviction of the accused on the substantive offense on trial is established, and then *only for the purpose of enabling the trial judge to impose the proper sentence.*" *Id.* at 249, 227 A.2d at 280 (citation omitted) (emphasis added). We later made clear that *Cameron* requires a bifurcated trial only where a defendant wishes to challenge the *fact* of a prior conviction in the record and not the *merits* of such a conviction. *Lafountain*, 160 Vt. at 318, 628 A.2d at 1246-47. We see little practical difference, therefore, between the uses of prior convictions in *Cameron* and in *Nichols*.[4]

■ Defendant further contends that *Nichols* is distinguishable because the sentence-enhancement in *Nichols* is "presumptive, not conclusive," 511 U.S. at 752, 114 S. Ct. at 1930 (Souter, J., concurring), while sentence-enhancement for DUI purposes is "mandatory and unrebuttable." We find defendant's distinction unavailing. Defendant asserts that the jury is not at liberty to acquit a defendant on the ground that the prior convictions were legally invalid. The bifurcated procedure established in *Cameron*, however, is expressly intended to allow a jury to convict or acquit a defendant of the substantive offense without regard to any prior offenses for which the defendant was convicted. *Cameron*, 126 Vt. at 249-50, 227 A.2d at 279-80. When a defendant is convicted of DUI a third time, the Vermont statute, unlike the federal sentencing guidelines at issue in *Nichols*, does not mandate imposition of a minimum sentence, but instead grants the sentencing judge wide discretion to fashion an appropriate sentence. See 23 V.S.A. § 1210(d).[5] Even if, as defendant suggests, *Nichols*

---

[4] Defendant is correct that *Cameron* requires the State to satisfy a higher standard of proof with respect to prior convictions than does *Nichols*. But defendant does not explain, and we fail to see, how proof beyond a reasonable doubt, which we required in *Cameron*, 126 Vt. at 249, 227 A.2d at 279, affords less protection to defendant's due process rights than does proof by a preponderance of the evidence, as permitted under *Nichols*.

[5] The statute does require a mandatory forty-eight hours in jail for second-offense DUI. 23 V.S.A. § 1210(c). As noted *supra*, n.1, defendant does not challenge imposition of an enhanced sentence for second-offense DUI.

authorizes sentence-enhancement only as a discretionary tool, we are not persuaded that Vermont's DUI sentencing scheme falls short of the mark.

Finally, defendant argues that our decision in *State v. DeRosa*, 161 Vt. 78, 633 A.2d 277 (1993), supports his claim of broader protections under the Vermont Constitution. In *DeRosa*, we vacated a jail sentence imposed for a violation of probation, where the original probationary sentence was imposed following an uncounseled conviction. *Id.* at 83, 633 A.2d at 280. Defendant contends that our analysis in *DeRosa* "follows the same line of reasoning" as that applied by the plurality opinions in *Baldasar*. *DeRosa*, however, did not involve a recidivism statute, but instead rested on the statute governing revocation of probation, which requires the court to decide "*'on the basis of the original offense* and the intervening conduct of the probationer'" whether confinement is warranted. *Id.* at 82, 633 A.2d at 280 (quoting 28 V.S.A. § ·303(b)). Unlike the statute at issue in *DeRosa*, a recidivism statute such as 23 V.S.A. § 1210(d) does not impose punishment on the basis of the prior offense, but rather punishes only the last offense committed by the defendant.

In sum, we adopt the reasoning of *Nichols v. United States* and hold that an uncounseled conviction that is constitutionally valid under *Scott v. Illinois* may be used for sentence-enhancement purposes under a recidivism statute that imposes a more severe penalty for subsequent convictions.

*Affirmed.*

**Morse, J.,** concurring. I concur in today's decision, but write briefly to express my rationale. The Court's analysis rests solely on the sentence, "The increased penalty for a subsequent offense does not repunish a defendant for the first offense, but rather punishes with greater severity the last offense committed by the defendant." That statement, of course, is true. It begs the question, however, why an uncounseled conviction may be used as part of the justification to send defendant to jail.

Sentencing ordinarily may take into account past misconduct (followed by conviction or not), and it is true that the trial court in this case was not required to send defendant to jail on account of the prior DUI conviction. If incarceration is unrelated to an uncounseled prior conviction, we would have no issue. But the Court should not facilely avoid the argument. But for defendant's first and second DUIs, the

court would not have been permitted to sentence him as severely as it did for the third offense.

The issue is where to draw the line in assigning counsel at state expense to indigent DUI defendants. If the dissent were the law, such counsel would be required in every DUI case in order to consistently apply the DUI sentencing scheme. On the other hand, the price to provide counsel in every case measured against the diminished reliability when a DUI suspect is denied counsel is difficult to weigh.

We know that due process cannot be made perfect at any price. If added burden is placed on one part of the criminal justice system, a price is exacted from another. We know that public defenders' time is limited, and if defenders are required to defend all indigents charged with DUI, public defenders' time will be spread thinner.

The question becomes how do we weigh the benefit of more reliable adjudication with the allocation of costs in the criminal justice system? There is no empirical measure I know about, and it comes down to a matter of judgment from experience. In my judgment, the requirement that counsel be afforded to all indigent DUI defendants in order to effectuate the recidivist statute is simply too big a price to pay for the relatively small marginal gain in "reliability."

I believe the result in this case is fair given the stakes at hand. Defendant was provided an advocate when loss of his freedom was most threatened. The offender knew that repeated DUI convictions would lead to more severe punishment, and the court had wide discretion to fashion a fair sentence under the recidivist law. Finally, in a case like this, the court may consider in fashioning the sentence that an uncounseled prior DUI conviction may have been less reliable.

**Johnson, J.**, dissenting. The majority, without engaging in independent analysis, holds today that the decision of the United States Supreme Court in *Nichols v. United States*, 511 U.S. 738, 746-49, 114 S. Ct. 1921, 1927-28 (1994), "comports with the protections afforded under the Vermont Constitution." 164 Vt. at 516, 671 A.2d at 1281. Because I believe that the *Nichols* decision rests on faulty reasoning, and represents a sharp break with a line of Supreme Court precedents affirming the importance of the right of indigent defendants to appointed counsel, I dissent.

## I

The majority, following the *Nichols* Court, mischaracterizes this case by focusing on the function of recidivism statutes. Although the

majority justifies its holding as supporting the "Legislature's efforts to handle the increasing numbers of repeat offenders," 164 Vt. at 519, 671 A.2d at 1283, today's holding in fact undermines a criminal defendant's right to counsel, a constitutional protection "necessary to insure fundamental human rights of life and liberty." *Johnson v. Zerbst,* 304 U.S. 458, 462 (1938). The majority has chosen to follow the U.S. Supreme Court in ignoring decades of well-reasoned precedent establishing both the critical need of criminal defendants for the assistance of counsel, and the right of defendants to such assistance if a term of imprisonment is imposed.

Although the right to counsel established by the Sixth Amendment to the U.S. Constitution initially encompassed only a criminal defendant's right to employ counsel, the U.S. Supreme Court gradually expanded its meaning to include a right of indigent defendants to appointed counsel under most circumstances. The first exhaustive review of the issue came in *Powell v. Alabama,* 287 U.S. 45 (1932). There, in reviewing the rape convictions of the Scottsboro Nine, the Court held that in a capital case, where a defendant is unable to employ counsel and incapable of putting on an adequate defense, failure to appoint counsel is a denial of due process and violates the Fourteenth Amendment to the U.S. Constitution. *Id.* at 71. Justice Sutherland, speaking for the Court, emphasized a defendant's pressing need for the assistance of counsel:

> The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.

*Id.* at 68-69.

Despite this sweeping language, the decision in *Powell* did not establish an absolute right to appointed counsel, even in all capital

cases, *id.* at 71, but left that decision to future cases. In *Johnson v. Zerbst*, 304 U.S. at 467-68, the Court held that indigent defendants facing federal charges are entitled to appointed counsel under the Sixth Amendment, unless the right is competently and intelligently waived. Twenty-five years later, overruling its previous decision in *Betts v. Brady*, 316 U.S. 455 (1942), the Court extended that holding to apply to a criminal defendant accused of a felony under state law. *Gideon v. Wainwright*, 372 U.S. 335, 343-45 (1963).

The Court in *Gideon* did not indicate whether its holding was limited to defendants facing felony charges, so the extent of the right to appointed counsel remained uncertain until the Court's decision in *Argersinger v. Hamlin*, 407 U.S. 25 (1972). Argersinger, an indigent defendant, had received a three-month jail sentence on the basis of an uncounseled misdemeanor conviction. The Court reversed his conviction, holding that "no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." *Id.* at 37. After *Argersinger*, lower courts were uncertain whether the right to counsel attached for any offense for which imprisonment was authorized, or only for those offenses for which imprisonment was actually imposed. In *Scott v. Illinois*, 440 U.S. 367 (1979), the Court emphasized that "actual imprisonment [is] the line defining the constitutional right to appointment of counsel." *Id.* at 373. The Court held that "no indigent criminal defendant [may] be sentenced to a term of imprisonment unless the State has afforded him the right to assistance of appointed counsel in his defense." *Id.* at 374.

At each turn, as the Court expanded the right to appointed counsel, the Court recognized the insurmountable obstacles facing criminal defendants forced to fend for themselves without the assistance of counsel. The *Johnson* Court, describing the Sixth Amendment protections as essential to achieving justice, stated that the right to counsel "embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself," especially where the prosecution is presented by counsel, because "[t]hat which is simple, orderly and necessary to the lawyer, to the untrained layman may appear intricate, complex and mysterious." *Johnson*, 304 U.S. at 462, 463. In *Gideon*, the Court again emphasized the inequality of resources and skills between uncounseled defendants and trained prosecutors:

> Governments, both state and federal, quite properly spend vast sums of money to establish machinery to try defendants

accused of crime. Lawyers to prosecute are everywhere deemed essential to protect the public's interest in an orderly society. . . . That government hires lawyers to prosecute and defendants who have the money hire lawyers to defend are the strongest indications of the widespread belief that lawyers in criminal courts are necessities, not luxuries.

*Gideon*, 372 U.S. at 344. The Court concluded that "any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him." *Id.*

The Court later explicitly recognized that the reasoning of *Gideon* and *Powell* was not limited to felony trials, but is relevant to any criminal proceeding "where an accused is deprived of his liberty." *Argersinger*, 407 U.S. at 32. The Court noted that complex legal and constitutional issues may be raised even in trials for petty offenses. *Id.* at 33. Also, relevant to this case, the Court pointed out the frequency of guilty pleas in misdemeanor cases, and the need for counsel both to advise defendants "of the prospect of going to jail or prison" and to ensure fair treatment by the prosecution. *Id.* at 34. Finally, the *Argersinger* Court emphasized the "'assembly-line justice'" common in misdemeanor cases, *id.* at 36, and the prejudice suffered by misdemeanant defendants as a result of the "obsession for speedy dispositions, regardless of the fairness of the result." *Id.* at 34.

This substantial body of precedent culminated in *Scott*, where the Court declined to extend the right to appointed counsel to midemeanant defendants who are not sentenced to a jail or prison term. *Scott*, 440 U.S. at 373-74. The Court in *Scott* did not conclude that such defendants are somehow better able to present a defense, or are less likely to be swept along in the "assembly-line" system of misdemeanor justice described in *Argersinger*. Rather, the Court concluded that "actual imprisonment is a penalty different in kind from fines or the mere threat of imprisonment" and that only defendants who suffer such a deprivation of liberty are entitled to appointed counsel.

In rejecting the argument of Justice Brennan, joined by Justices Marshall and Stevens, that the right to appointed counsel should attach for any offense for which imprisonment is authorized, *id.* at 382 (Brennan, J., dissenting), the *Scott* majority noted that extending the right to appointed counsel would "impose unpredictable, but necessarily substantial, costs on 50 quite diverse States." *Id.* at 373. The *Scott* majority apparently concluded that the high cost of providing

counsel for all misdemeanant defendants, or even all defendants charged with misdemeanor offenses for which imprisonment is authorized, outweighs the harm to those defendants who will suffer wrongful convictions because they lack the assistance of counsel, *as long as those defendants do not suffer actual imprisonment* as a result of the wrongful conviction. Or, put another way, although uncounseled misdemeanor convictions may not be as reliable as convictions obtained where the defendant is represented by counsel, that inherent unreliability does not rise to a level of constitutional significance unless the conviction results in a jail or prison sentence. See *Nichols*, 511 U.S. at 750, 114 S. Ct. at 1929 (Souter, J., concurring) (arguing that *Scott* relied on theory that reliability concern raised by uncounseled conviction "is tolerable when a defendant does not face the deprivation of his liberty").

## II.

Inexplicably, by holding that a defendant may receive a sentence of imprisonment based on a prior uncounseled conviction, both the *Nichols* Court and the majority have abandoned the line drawn so emphatically in *Scott.* The majority, in fact, does not even confront this inconsistency, but merely explains that the increased penalty for a subsequent offense under 23 V.S.A. § 1210(d) "does not impose punishment on the basis of the prior offense, but rather punishes only the last offense committed by the defendant." 164 Vt. at 521, 671 A.2d at 1284. This reasoning is confusing and simply inadequate. The very language of the statute explicitly outlines heightened penalties for second and third offenses. 23 V.S.A. § 1210(c) & (d). A sentence imposed for a third offense, although punishing the most recent offense, is based as well on the fact of the first and second convictions. As the majority recognizes, the prior convictions must be alleged by the State as elements of the repeat-offender charge, and must be proven beyond a reasonable doubt. 164 Vt. at 520, 671 A.2d at 1283; *State v. Cameron*, 126 Vt. 244, 249-50, 227 A.2d 276, 279 (1967). The majority cannot sweep away the fact that defendant's prior uncounseled DUI conviction "directly resulted" in a harsher sentence, *Nichols*, 511 U.S. at 757, 114 S. Ct. at 1933 (Blackmun, J., dissenting), by asserting that the prior conviction was somehow not the basis for the sentence.

The goal of recidivism statutes is to punish criminal acts more severely when they are committed by *repeat* offenders. Defendant received a felony sentence for his DUI conviction only because the

court found that he had been twice previously convicted of the same offense. The majority's insistence that defendant was punished for his most recent offense, although a true statement, unfairly glosses over defendant's serious constitutional claim: that his prior uncounseled conviction is not reliable enough to serve as a predicate for a sentence of imprisonment.

Although not mentioned by the majority, this is the issue which concerned the *Baldasar* plurality and the dissenting justices in *Nichols*. As Justice Blackmun wrote in *Nichols*, the "concern here is not with multiple punishments, but with reliability. Specifically, is a prior uncounseled misdemeanor conviction *sufficiently reliable* to justify additional jail time imposed under an enhancement statute?" *Nichols*, 511 U.S. at 757-58, 114 S. Ct. at 1933 (Blackmun, J., dissenting) (emphasis added). *Scott*, which was premised upon the significant difference between a sentence of imprisonment and other types of punishments, compels the conclusion that convictions resulting in imprisonment must be held to a higher standard of reliability — a standard that is not met if the defendant is deprived of the assistance of counsel. See *id.*

In this case, defendant's conviction for DUI, third offense, and the resulting felony sentence imposed pursuant to 23 V.S.A. § 1210(d), was based in part on a prior uncounseled DUI conviction. In that earlier proceeding, defendant was denied counsel, and entered a plea of guilty. Like the defendant in *Nichols*, whose sentence for a federal drug offense was increased by over two years because of a prior uncounseled DUI conviction, defendant could not have been sentenced to a term of imprisonment for the prior conviction, because he was deprived of the assistance of counsel. Without counsel, defendants know they will be hampered in presenting a defense at trial. Without counsel, defendants are at a disadvantage in plea negotiations with the state's attorney. Regardless of whether a jail term is imposed, the conviction retains the inherent unreliability of any uncounseled conviction.

The *Argersinger* Court's concerns that a misdemeanant defendant without counsel might be lost in the shuffle of a busy court, or be swept along by a process not fully understood, apply with equal force to defendant's prior conviction. If anything, such concerns are heightened, not lessened, by the fact that defendant's prior conviction was not considered sufficiently serious by the court or the state's

attorney to warrant a sentence of imprisonment.* None of the factors pointing to the unreliability of the first conviction is changed by the fact of the later one. I must agree with Justice Marshall that "[a]n uncounseled conviction does not become more reliable merely because the accused has been validly convicted of a subsequent offense." *Baldasar*, 446 U.S. at 227-28 (Marshall, J., concurring). Indeed, the majority's contrary holding represents "an illogical and unworkable deviation" from precedent. *Id.* at 229.

## III.

The U.S. Supreme Court, despite persuasive arguments to the contrary, chose in *Nichols* to ignore the reasoning of its own precedents and to erode the protection of the right to counsel established by the Sixth Amendment. This Court, however, as the "final interpreter of the Vermont Constitution . . . has final say on what process is due in any given situation." *State v. Brunelle*, 148 Vt. 347, 350, 534 A.2d 198, 201 (1987). As the majority recognizes, we have on a previous occasion held that Chapter I, Article 10 of the Vermont Constitution provides greater protection for a criminal defendant than analogous provisions of the federal constitution. See, e.g., *id.* at 351, 534 A.2d at 201-02. Our one-time statement in dicta in *Brunelle* that the "right to be heard by oneself and by counsel" conferred by Chapter I, Article 10 is "similar to the federal Sixth Amendment right," *id.* at 352, 534 A.2d 202, does not foreclose the Court's options in this case.

Our only precedent on this question is our decision in *State v. Lafountain*, 160 Vt. 313, 316-17, 628 A.2d 1243, 1245-46 (1993), a decision grounded in the federal constitution. In *Lafountain*, we interpreted the splintered *Baldasar* ruling on the narrowest grounds possible, as permitting the use of a prior uncounseled conviction to enhance a sentence of imprisonment, unless the prior offense carried an authorized sentence of greater than six months or the defendant was actually imprisoned for the prior offense. *Id.* Applying this rule, we upheld the defendant's misdemeanor conviction and accompanying mandatory sentence, pursuant to 23 V.S.A. § 674(b), for driving with a suspended license (DLS), based in part on his two prior

---

* Indeed, without the advice of counsel defendant may well have been unaware that his guilty plea could form the basis for a sentence of imprisonment in a later proceeding. Although not raised here, *Nichols* held that a court is not obligated to inform a defendant that a conviction may later be used for sentence enhancement. *Nichols*, 511 U.S. at 748, 114 S. Ct. at 1928.

uncounseled civil DLS violations. *Id.* at 314, 628 A.2d at 1244. We did not, however, give the issue separate consideration under the Vermont Constitution, nor did the defendant argue that Chapter I, Article 10 required a different result than that reached in *Baldasar.*

Today, the question is directly presented as one of state constitutional law. Rather than following the shifting sands of the U.S. Supreme Court, I believe we should face this issue squarely and decide it independently. I would hold that the right to counsel established by Chapter I, Article 10 of the Vermont Constitution precludes the use of defendant's prior uncounseled misdemeanor conviction to enhance the term of imprisonment imposed for this offense. Accordingly, I would remand the case for resentencing, without reference to the prior uncounseled conviction.

